HENNESSY BROS. & EVANS CO. v. MEMPHIS NAT. BANK.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1904.)

No. 1,246.

1. BANKS—OVERDRAFTS—NOTES.

An overdraft allowed by a bank is a loan due on demand, and hence, where a demand note is given therefor, a suit may be maintained thereon to the same extent as could have been maintained on the overdraft thereby segregated from the account.

2. CORPORATIONS—ACTS OF OFFICERS—NOTES—EXECUTION.

A building corporation opened an office in a city in a foreign state, where it was conducting large building operations, and placed the same in charge of its assistant secretary, who opened a bank account in defendant's bank in the name of the corporation through which the latter's financial transactions at that place were accomplished. The account becoming overdrawn, such officer executed demand notes in the name of the corporation to the bank therefor, whereupon the amounts were credited in the corporation's bankbook, and the book was delivered to the officer, whose accounts were periodically checked up by the corporation, and no objections to the accounts were made. *Held*, that the corporation was liable on the notes, though no express authority to the officer executing them to do so was shown, and he subsequently became a defaulter to the corporation for a large sum.

3. SAME—INTEREST.

Where an overdraft was settled by the execution of a note payable on demand, the amount due bore interest from the date of the settlement.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

W. A. Percy and T. K. Riddick, for plaintiffs in error.

Carroll, McKellar, Bullington & Biggs, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. There are counterwrits of error in this case, on which each party prays for the reversal of the judgment rendered by the court below, and there are bills of exceptions taken by each. But the errors complained of on each side relate to one controversy, and may be considered together.

Hennessy Bros. & Evans Company, a building corporation organized under the laws of Illinois, and located at Chicago, entered into large contracts during the year 1900 for building in the city of Memphis, Tenn., involving the employment of several hundred thousand dollars, and sent its assistant secretary, John D. Evans, who had executed the contracts in its behalf, to Memphis, to superintend its business there. On account, as we must suppose, of the frequently recurring financial necessities of his company at Memphis, Evans, in its behalf, and with its knowledge and assent, opened an account with the Memphis National Bank in November of that year. On December 26, 1900, the account of the company was overdrawn, and, to cover the overdraft, he gave to the bank a note, payable on demand, for $4,500, and signed in the company's name "by John D. Evans Asst. Secy.," the entire amount of which was placed by the bank to the credit of the company in its account. In April, 1901, the account being again overdrawn,

Evans gave the bank another note payable in 30 days, for $2,000, signed in the same way, and the proceeds were put to the credit of the company in its account. This last note was renewed three times; the last renewal having been made July 17, 1901, by a note for the same amount payable on demand. The company had a passbook in which the account was frequently balanced by the bank and returned to the company. The entries in the passbook showed the credits of the $4,500 and of the proceeds of the $2,000 note as of the dates when the notes were given. This account, consisting of debits and credits, continued from November, 1900, to September, 1901, at about which time John D. Evans disappeared; being, as was alleged by the company, a defaulter to it for a considerable sum, which it was claimed was obtained by him by checks on the company's account with the bank, which was thereby overdrawn. Later other officers of the company settled with the bank for the overdraft then appearing, but refused to acknowledge or pay the notes of $4,500 and $2,000, respectively, upon the ground that they had been given by Evans without authority. It appeared upon the trial that from time to time the president and secretary of the company, who had general charge of its finances, went from Chicago to the Memphis office, and "checked up" Evans' financial transactions, including those with the bank. But the company gave evidence tending to show that the passbook above mentioned was not produced to them, and that it was not seen by them until after the disappearance of Evans. But they knew that Evans had it in his possession. They also knew that, during the running of the account, overdrafts had occurred at several times, and they made no objection to the making of such overdrafts. Some other facts appear in the course of this opinion, but ·it is believed that those most material have now been stated.

The bank brings this suit to recover the amount of the two notes above mentioned, and adds the common counts, on which it claims that, if it cannot recover upon the notes themselves, it may be allowed to recover the amounts which they represent as having passed to the credit of the company, of which it had the avails, as money had and received. As to the notes, the company pleaded that they were never authorized, and, as to the other counts, it pleaded the general issue. Upon the trial, the making of the notes having been proved in the circumstances already stated, the defendant called as witnesses the president and other officers of the company, who gave general evidence denying that Evans was authorized to sign the notes for the company, and denying that the company ever had knowledge of the making and using said notes until after the disappearance of Evans, and that it had never ratified them. Assuming that an issue was thus established upon the evidence, the court permitted the parties to go into evidence in respect to the question as to whether the defendant had received benefit from the overdrafts which the notes represented, and, if so, how much. A prolonged inquiry was entered upon for the purpose of ascertaining what debts of the company had been paid by checks made by Evans on the bank, a considerable number of which were traced to the company's creditors. At the close of the testimony the plaintiff asked for an instruction that a verdict should be rendered for the

plaintiff for the amount of the notes, with interest. This request was refused, and the plaintiff excepted. The court, in its instruction to the jury, left open for their determination the question whether the giving of the notes by Evans was authorized or not, and, if not, then the question to what extent the defendant had been benefited by the credit given on account of them, in determining which the defendant could only be charged with what it actually got, and not with that which Evans appropriated to his own use. The jury rendered a verdict for the plaintiff for $6,008.00. Several rulings were made by the court in taking evidence and in its charge to the jury, which are complained of by the defendant, and are made grounds for its assignments of error on its writ.

In view of those facts about which there was no conflict in the testimony, we think the plaintiff was entitled to the instruction which it asked. There was no legal ground on which the contention that the notes in suit were not obligatory upon the defendant, or, what amounts to the same thing, that it was not bound for the credit which it got on the occasions when they were given, could rest. An overdraft allowed is a loan due on demand, and may be sued for as such. Thomas v. International Bank, 46 Ill. App. 461 ; Franklin Bank v. Byram, 39 Me. 489, 63 Am. Dec. 643. Of precisely the same character is the obligation of a note given, payable on demand, to cover it, to the extent that the overdraft is thereby segregated from the account. With respect to the note for $2,000, it appears that a part of that amount was to pay an overdraft, and the balance to provide funds to check against. These funds were checked against and withdrawn by the man in charge of the account, and apparently, so far as the bank could see or know, for the company's business. The notes served every purpose which would have been subserved if the company had made equivalent deposits on those dates. The bank required the overdrafts to be paid, and, instead of cash, it took those notes. The authority which the company intrusted to Evans, or the exercise of which it repeatedly sanctioned, was sufficiently extensive to cover his dealings with the bank, including the giving of the notes. We are inclined to think that his general authority, coupled with that which was given him to open an account and transact the business of his company with the bank, was sufficient to justify his covering of the overdrafts which he had made in the company's behalf, and of which the company had the benefit. If he had made the company's note, and negotiated it with the bank, professedly for the company's business, and secured a loan of money thereon, which he used in the company's business, could it be doubted that the company would be bound by his act? We think not. If his use of the proceeds was that of paying an overdraft owing by the company, would not that be devoting it to the company's business? But there could be no distinction between such a transaction as that which occurred and that supposed, except in mere form, on which the law would lay no stress. But it was indisputably proved that the company knew that overdrafts were occurring. It took no precautions to prevent them, or to provide for their settlement. It must have known that they had been provided for in some way, and must be if they occurred again. The only reasonable inference is that it was intended by the

company to leave the duty of attending to such contingencies to their superintendent, who was in charge of the account.

There is another feature of the case, however. The company kept a passbook, which was periodically balanced by the bank and returned to the company; that is, it was returned to its superintendent, who had his office there, and was the person who conducted the business to which the book had relation. The credits obtained by the notes were shown by the book. If the company had any reason to suppose that those credits were obtained for its own remittances to Evans, an examination of its own books when it was "checking up" Evans would have immediately disclosed that it had not made such remittances. And it may be remarked in this connection that it is not now contended that such remittances were made, or that there were any remittances of which these could have been parcels. A comparison of the books of the company with those of the agent would detect such a fact if it existed. But it is urged that Evans was a rogue, and was contriving in his own interest to put some of the money he should get from the bank on the credit of his company to his own uses, and that therefore the information given by the passbook should not be imputed to his principal. The rule of law thus invoked is not applicable. It is applicable when the agent leaves his place as agent, and, in derogation of the rights of his principal, concocts and carries into effect some scheme of his own for his private advantage, and where the other party knows or has good reason to believe that the agent is acting falsely. But there is no reason here for charging the bank with notice of any wrongful purpose of the company's agent. It returned the balanced passbook to the person put in place by the company to receive and examine it, and take steps to correct anything objectionable which the book indicated. The bank had the right to expect that the company would do its duty in this regard, and the company is affected by notice of the contents of the passbook to the same extent as if the agent had been an honest one. It was so held by this court in First National Bank of Evansville v. Fourth National Bank of Louisville, 16 U. S. App. 1, 56 Fed. 967, 6 C. C. A. 183. And see Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; First National Bank v. Allen, 100 Ala. 482, 14 South. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80. This contention of the defendant runs counter, as, indeed, does its entire defense, to the settled rule that, when one of two persons is to suffer by the act of an agent intrusted by his principal with the appearance of authority to do the act, that one shall take the burden whose agent committed the wrong. We think this is a plain case for the application of that doctrine. It seems to fit the undoubted facts, and we can see no valid reason why the consequences of the dishonest conduct of the agent toward his principal should be shifted from the company to the bank, which appears to have acted in good faith. If the controlling facts of the case were in doubt or open to fair dispute, the case should have gone to the jury under a proper submission of the issues by the court. But they were not, and the case should be dealt with accordingly, as was done in Myers v. Bank, 193 Pa. 1, 44 Atl. 280, 74 Am. St. Rep. 672. It is true that

there is a sweeping denial of the authority of Evans, but that amounts to nothing in the face of the actual facts.

With respect to the matter of interest, an overdraft running without any interest or adjustment does not draw interest, upon the principle that applies to open accounts generally. But it is held that when it has been demanded, or an account therefor has been rendered, it would carry interest. Casey v. Carver, 42 Ill. 225.

As there must be a new trial, and the questions raised upon the other writ are not likely to be presented in the same way, we forbear to consider them.

The judgment will be reversed on the writ of error taken by the Memphis National Bank, with costs.