[L. A. No. 3146.   Department Two.—September 25, 1913.]

# NEWMARK GRAIN COMPANY, Appellant, v. MERCHANTS NATIONAL BANK OF LOS ANGELES, Respondent.

BANKS—DEPOSIT OF CHECKS—INDORSEMENT TO ORDER OF BANK—CASHING CHECKS BEARING SPECIAL INDORSEMENT—PAROL EVIDENCE—EXONERATION OF BANK.—In an action by a depositor against a bank to recover the amount of various checks drawn in favor of the depositor and indorsed by it to the order of the bank for deposit to its credit, but which upon presentation had been paid by the bank to the ostensible agent of the depositor, who had feloniously appropriated the proceeds to his own use, parol evidence is admissible, in exoneration of the bank in making such payment, that the same was done in pursuance of a verbal agreement with the depositor to the effect that all checks presented to the bank which were indorsed with the name of the depositor solely by means of a rubber stamp, should be credited to the account of the depositor, while checks bearing the additional pen and ink signature of certain officials of the depositor, should be paid in cash, if so requested, to the person presenting them. Such evidence did not have the effect of varying the written contract of indorsement.

ID—TITLE OF CHECKS DEPOSITED PASSES TO BANK—DEBTOR AND CREDITOR.—When a check indorsed to a bank is deposited in the ordinary course of business, the title immediately passes to the bank which gives credit at once to the depositor. The bank is not the agent of the depositor but the relation created is that of debtor and creditor.

ID.—DISBURSEMENT OF MONEY TO CREDIT OF DEPOSITOR—INDEPENDENT CHECK NOT NECESSARY.—There is no compulsion arising out of such written contract of indorsement whereby the bank and the customer are prohibited from disbursing the moneys on credit except through the process of an independent check drawn against the former by the latter. This is a matter governed by usage or by special contract.

ID.—OSTENSIBLE AGENCY OF PERSON PRESENTING INDORSED CHECK.—Even if the person who made such agreement with the bank for the cashing of the specially indorsed checks was without actual authority to do so, the fact that the officers of the depositor did frequently attach their signatures to checks when such signing was not necessary in the usual course of deposit, and did intrust them to the

employee who presented them, was sufficient to confer ostensible authority upon the latter to cash the checks, and to exonerate the bank, acting in good faith, in so doing.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Kuster, Loeb & Loeb, and Hunsaker & Britt, for Appellant.

Flint, Gray & Barker, L. W. Jutten, and Bradner W. Lee, for Respondent.

MELVIN, J.—Plaintiff appeals from the judgment and from an order denying its motion for a new trial.

There were eighty-nine causes of action, six of which were dismissed by the court below. Findings were waived in four others, the seventy-seventh, eightieth, eighty-first, and eighty-fourth. The eighty-sixth and eighty-eighth causes of action are covered by the same findings which are applicable to the first seventy-five causes. The eighty-ninth cause of action is a common count for money had and received, and it refers to the same moneys sued for in the other parts of the complaint. We will therefore consider collectively the first seventy-five causes of action.

The object of the suit was to compel the bank to pay the moneys collected by it upon various checks, drawn upon other banks, made payable to the Newmark Grain Company and indorsed by that corporation to the order of the defendant. The complaint alleged that these amounts had been deposited in regular course of business with the Merchants National Bank of Los Angeles for collection for the account of the plaintiff. Defendant admitted receiving the checks but denied that they were received for account of the plaintiff. It is alleged in the answer that the amounts called for by the various checks were paid to one Schickl, the ostensible agent of the plaintiff; that the cashing of the checks in question for plaintiff's bookkeeper Schickl was done by courtesy and incidentally to the usual banking business of the parties to the action, extending over a period of approximately three years;

that the plaintiff had been guilty of laches which ought to prevent recovery; and that it was estopped by its conduct from receiving any relief. The court found all issues in favor of the defendant, including one that Schickl was the authorized agent of plaintiff. There was no question that Schickl received the moneys and feloniously appropriated them to his own use. There is no denial that he was in the employ of the plaintiff. The only serious question upon an answer to which all of the findings are really based is whether or not the banking corporation had authority to cash the checks for him instead of crediting the plaintiff with the amounts called for. Among the other findings is the following which is attacked by the appellant: "It had been expressly agreed and understood between plaintiff and defendant, and as a part of all banking transactions by defendant with plaintiff, that all checks presented by plaintiff, or its officers, servants or employees, which checks were indorsed with the name of plaintiff thereon by means of a rubber stamp solely, should be credited to the account of plaintiff in the pass or bank book thereof, but that whatever checks were presented to defendant bank by plaintiff, or any of its officers, servants or employees, which checks had indorsed thereon the name of plaintiff by means of a rubber stamp or in writing and had also indorsed thereon by means of a pen and ink or written signature the name of any corporate officer of plaintiff, and the said person or persons presenting said checks so indorsed as last aforesaid should or did request defendant bank to cash the same and deliver the cash to the person or persons so presenting the same as aforesaid, then said defendant bank was and would be authorized to pay the cash in the amount of said last mentioned checks to said person or persons so presenting the same and said payments would be deemed made to plaintiff."

Appellant does not question our oft-repeated rule that we will not undertake to settle a material conflict of testimony nor to disturb a finding based thereon, but the counsel for appellant assert that the uncontradicted material evidence proves the bank's authority to have been limited to the deposit of the checks to plaintiff's credit. In this behalf they call attention to the terms of the indorsement made by a rubber stamp furnished to plaintiff by defendant. This indorsement

was in the following language: "Pay to the order of Merchants National Bank, Los Angeles, Cal. Newmark Grain Co." On the checks here involved this indorsement was followed by the name in ink of some officer of the company authorized to sign checks, as for example, "Faw, Treas." "M. N. Newmark," "H. E. Woolner." It is insisted that the added name did not vary the indorsement which was a written contract capable of being changed only by a contract in writing and that the court depended upon evidence tending to show only a variance by parol. The testimony showed that for years the bank had done business with the plaintiff and its predecessor, the firm of Newmark & Edwards. During the partnership Mr. Faw, who was a trusted employee, was authorized to transact any and all business for the firm with the defendant. It was in testimony that Mr. Faw made an arrangement whereby checks indorsed by the firm name and bearing the name also of any one authorized to sign checks for the firm, would be accepted by courtesy and cashed for the member of the firm or employee presenting them. Checks bearing merely the rubber stamp indorsement would not be cashed but would be passed to the credit of the firm. This arrangement was continued during the existence of the partnership, cash being paid only upon those checks bearing the imprint of the rubber stamp and the *written* indorsement of one of the persons empowered to draw checks for Newmark & Edwards. For years Mr. Faw attended to most of the banking business for the firm and he continued so to act after the formation of the corporation plaintiff, which occurred in January, 1906. After the incorporation of the Newmark Grain Company and until the middle of 1907 when Schickl entered the employ of the plaintiff, Mr. Faw continued to do most of the banking business. When the corporation succeeded the partnership there was no change in the methods of business with the bank except that Mr. Roy Newmark's name was added to the list of those authorized to sign checks, and the bank was notified that Mr. Edwards had withdrawn from the business. Early in 1906 the question of Faw's practice of writing only his initials instead of his name under the indorsement made by the stamp came up for discussion. Two of the witnesses, employees of the bank, testified regarding a conversation between Mr. Faw and Mr. Anderson, the cashier

(who died before the trial).   Mr. Ramboz gave an account of this conversation which he said occurred at the bank at a time, according to his recollection, just previous to the middle of February, 1906.   Among other things this witness said: "Mr. Anderson called Mr. Faw and stated the tellers had been complaining about indorsements appearing on the checks of the Newmark Grain Company—complaining the indorsements of Mr. Faw being merely 'T. F. F.' or 'Faw.'   He called his attention to the fact those checks had been presented to us with the request we pay cash on them and it was not entirely satisfactory.   Mr. Faw stated he was in not very good health and it would be a great accommodation to him to be allowed to do that.   Mr. Anderson agreed to do it.   Mr. Faw instructed Mr. Anderson to pay cash to any one who presented those checks indorsed with the rubber stamp indorsement, 'Pay to the order of Merchants National Bank, Los Angeles, Newmark Grain Co.,' then the written indorsement 'T. F. F.' or 'Faw' or any of the other officers of the company."   Another witness, Mr. Fraser, said of this conversation: "The substance of the conversation was we would continue to cash checks of the Newmark Grain Company with the written indorsement of any officers of the Newmark Grain Company; and Mr. Faw replied that was the way the business would be carried on; just continued."   Schickl was employed as bookkeeper for the plaintiff for a period extending from June, 1907, until October, 1909.   Although he attended to nearly all the corporation's business with the bank and had general supervision of the books and access to the safe, the first audit after he was employed was in October, 1909, when his defalcations were discovered.   When Schickl began his term of employment he was introduced at the bank by the secretary of the plaintiff, who stated that Schickl was the new bookkeeper and that he would transact business with the bank on behalf of plaintiff.   He was thereafter recognized as the agent of plaintiff.   He deposited many checks bearing the indorsement of the plaintiff without the individual signatures of any of its officers, and he received cash by courtesy upon checks, each of which had, in addition to such indorsement, the written signature of a person authorized to draw against the account.   It will thus be seen that the finding of which plaintiff complains is amply supported by the evidence, if plaintiff's objection that the

written contract of indorsement was varied by parol be not tenable.    To be sure, the testimony of defendant's witnesses was contradicted by that of the witnesses for plaintiff in many particulars, but with this conflict we are not concerned.    Respondent admits the force of all of the authorities cited by appellant to the effect that a written contract of indorsement when plain and unambiguous may not be varied by parol. The gist of the written contract indorsed upon each check by the use of the rubber stamp was that the bank upon which the check was drawn would pay to the defendant bank or to its order the amount represented by the check.    The agreement which passed title to the bank did not necessarily control the disposition or the proceeds.    That is a matter which may be regulated by collateral agreement.    When a check indorsed to a bank is deposited in the ordinary course of business the title immediately passes to the bank which gives credit at once to the depositor.    (*Plumas County Bank* v. *Bank of Rideout, Smith & Co.,* 165 Cal. 126, [131 Pac. 360].)    The bank is not the agent of the depositor but the relation is that of debtor and creditor.    It is therefore competent for the bank to enter into an agreement with reference to the disposition of the sum thus credited.    There is no compulsion arising out of the written contract of indorsement whereby the bank and the customer are prohibited from disbursing the moneys on credit except through the process of an independent check drawn against the former by the latter.    This is a matter governed by usage or by special contract.    For example, where a check is payable to an individual as guardian of another, the bank is not compelled to pay out the funds to him as guardian.    It may credit the money represented by the check to his personal account.    The language whereby the bank obtains title does not of necessity control the disposition of the proceeds.    (*United States Fidelity & Guaranty Co.* v. *First National Bank of Monrovia,* 18 Cal. App. 438, [123 Pac. 352].)    Unquestionably such a contract could be made in writing as would require the depositary to dispose of the fund represented by a check in a particular manner and appellant has cited numerous authorities sustaining such contracts. Among these and typical of their class are *White* v. *Miners Nat. Bank,* 102 U. S. 658, [26 L. Ed. 250], and *Commercial Nat. Bank* v. *Hamilton Nat. Bank,* 42 Fed. 880.    In

such cases the courts were dealing with special indorsements prescribing the exact manner of credit for the paper involved, but here the indorsements were directed to the title in the checks passing to the bank and not to the method of paying out the money. It is clear that the bank was duly authorized to cash such checks and that such authorization was not in derogation of any written contract, and that the method of indicating the checks to be directly cashed was the written indorsement by one of the plaintiff's officers following the general order of the corporation appearing upon the back of a check.

The only other question requiring an answer is that relating to the finding that Schickl was the agent, either actual or ostensible, of the Newmark Grain Company. That he was at least the ostensible agent of plaintiff we are convinced. (Civ. Code, secs. 2315, 2317, 2334.) Even if it be conceded that the evidence does not show actual agency—that is supposing Mr. Faw had no right to make the arrangement for the cashing of the specially indorsed checks, the fact remains that the officers of plaintiff *did* frequently attach their signatures to checks when such signing was not necessary in the usual course of deposit and *did* intrust such checks to Schickl. They were at least put upon inquiry if they did not know why he desired such extra, personal indorsements. The bank, acting in good faith upon the arrangement with Faw, thus apparently ratified by the officers of the corporation, is fully protected. (*Bank of Ukiah* v. *Mohr*, 130 Cal. 268, [62 Pac. 511]; *Columbia Mill Co.* v. *National Bank of Commerce*, 52 Minn. 224, [53 N. W. 1061].) The case last cited is very instructive and very much like the one at bar. The plaintiff had furnished to the bank the signature of one Zeidler, its treasurer, as the only person authorized to sign checks. There grew up, however, a custom of sending to the bank for deposit checks payable to the order of the mill company indorsed only by the impression of the plaintiff's name by a rubber stamp. Heilpern, who was the trusted bookkeeper of the plaintiff, had been accustomed for years to take to the bank and to receive thereon money for checks indorsed merely by the stamp. The check on which the suit was brought was one bearing the imprint of the stamp and Heilpern's own signature under it. The bank relied on the custom of the parties

CLXVI Cal.—14

to show implied or at least apparent authority to pay out the money to Heilpern without Zeigler's signature. The court held that such a manner of conducting the business in the plaintiff's office might have been proved as would have justified the jury in finding that its officers must have known the custom of the bookkeeper and the cashier in regard to checks, and that if such finding had been made the intention to vest authority might have been implied.

We conclude therefore that the judgment is sufficiently supported by the findings discussed above and that the evidence supports the findings.

The judgment and order are affirmed.

. Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.