[Civ. No. 2772. Third Appellate District.—October 23, 1924.]

## W. J. FAULKNER et al., Respondents, v. BANK OF ITALY (a Corporation), Appellant.

[1] BANKS AND BANKING — JOINT ACCOUNT — CONSTRUCTION OF DE- POSITORS' AGREEMENT—LIMITED AUTHORIZATION.—Where a joint ac- count is opened in a bank and the parties sign a card on which it is recited that all deposits made with the bank "to the credit of the above account, are and shall be deposited by us and received by said bank upon the agreement that the same be paid to either, or to the survivor of us, and that such deposits and any additions thereto made by either of us, after the making thereof shall be- come our property as joint tenants, and that the same together with all dividends thereon, shall be held for the exclusive use of us, and may be paid to either of us during the lifetime of both or to the survivor after the death of one of us, and such pay- ment, and the receipt or acquittance of the one of us to whom such payment is made shall be a valid and sufficient release and discharge of said bank," such writing is at once an authorization and a limitation, and, while it authorizes either one of the parties to withdraw from the bank the entire sum represented by the account, it does not authorize either to draw any sum of money other than as the same is deposited to the credit of said account; neither does it authorize the bank to permit either to overdraw the account and charge such overdraft to the other party.

---

1. Rights of parties to joint deposit, notes, Ann. Cas. 1916D, 519, 529, 533. See, also, 3 R. C. L. 527; 4 Cal. Jur. 195.

[2] ID.—DISHONORED CHECK—RIGHT TO CHARGE BACK.—A bank has the right to charge the amount of a dishonored check back against the account of the customer.

[3] ID.—ACCEPTANCE OF CHECK BY BANK—TITLE.—Where a bank accepts a check without protecting itself by taking the check merely for collection, the title to the check passes absolutely to the bank.

[4] ID.—OVERDRAFT—LOAN TO DRAWER.—An overdraft is in legal effect a loan of that much money by the bank to the drawer of the check.

[5] ID. — PRESENTATION OF CHECK FOR CASHING — LIABILITY OF INDORSER.—The liability of an individual presenting a check to a bank for cashing depends upon the relationship of indorser and indorsee.

[6] ID.—PRINCIPAL AND AGENT—AUTHORITY TO CREATE OVERDRAFT.— Where a principal authorizes an agent to collect money and draw and indorse checks, such authorization does not empower the agent to create an overdraft.

[7] ID.—JOINT ACCOUNT—FRAUD OF CODEPOSITOR—ESTOPPEL.—Neither plaintiff's act in introducing the other party to defendant bank nor his act in signing the joint tenancy agreement was sufficient to invoke the principle of estoppel as against plaintiff, so as to authorize defendant bank to charge plaintiff's personal account with the amount defendant bank was defrauded by the acts of said other party, where plaintiff was entirely innocent and had no knowledge of any fraud or intended fraud of said other party and did not participate in the fruits of the latter's fraud, and plaintiff did not indorse the worthless check deposited to the joint account by said other party, nor did he sign the check used by said other party in making the withdrawal from the joint account, and the joint agreement limited the authority of the bank in making payments to the amount of the deposit and such sums as might be added thereto.

(1) 7 C. J., p. 640, sec. 324.    (2) 7 C. J., p. 653, sec. 351.    (3) 7 C. J., p. 635, sec. 314.    (4) 7 C. J., p. 682, sec. 410.    (5) 8 C. J., p. 61, sec. 82.    (6) 2 C. J., p. 640, sec. 282 (Anno.).    (7) 21 C. J., p. 1119, sec. 122.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order denying defendant's

2.   See 3 R. C. L. 524; 4 Cal. Jur. 194.

4.   Right of bank to recover overdraft from depositor, note, 12 A. L. R. 360.   See, also, 4 Cal. Jur. 279.

6.   See 4 Cal. Jur. 217.

7.   See 3 R. C. L. 540; 4 Cal. Jur. 211.

motion to vacate and set aside said judgment. R. L. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Louis Ferrari, J. R. Leppo and J. J. Posner for Appellant.

R. M. Barrett for Respondents.

PLUMMER, J.—Action by plaintiffs for money had and received by the defendant in its savings department and credited to the account of the plaintiffs in the sum of $624.25. The plaintiffs had judgment and from this judgment and also the order of the court denying defendant's motion to vacate and set aside the same the defendant appeals.

Before signing and filing findings in the above-entitled cause the learned trial court summarized the questions involved in a very clear and succinct statement, from which we quote the following:

"Plaintiffs are husband and wife. November 9th, 1920, they opened a joint savings account with defendant bank. From time to time they deposited their earnings in this account until it aggregated the total sum of $624.25, including interest due. Faulkner for some time was an employee at the Sonoma State Home. In May, 1922, one E. C. Reilly also became an employee of that institution. Faulkner barely knew Reilly. About May 22, 1922, Reilly approached Faulkner saying he had a check he wished to cash at Santa Rosa, and asked Faulkner to take him to Santa Rosa and introduce him to the bank. Faulkner arranged to bring him to Santa Rosa, and presented him to the Bank of Italy, where Faulkner was well known as a customer. On the way driving from Eldridge, Reilly told Faulkner that his check was for 800-odd dollars signed by Wm. B. Boiatano; that he, Reilly, was not acquainted at any bank in this vicinity; that he intended to open up an account in the bank; that he was going away on a vacation trip, that he might be going about from place to place; that he might have other checks to deposit to his account in the joint names of Reilly and Faulkner, so that Faulkner could accommodate him by depositing any future checks which might be sent him.

"Faulkner appeared to be entirely innocent of any fraud upon the bank. There is no evidence that he ever knew Reilly, or his reputation, except as he had known him to be an employee at Eldridge. They went together to the bank. They were waited on by the cashier, Mr. Reeves. Faulkner merely introduced his associate to the bank in the customary way as Mr. Reilly. Reilly did most of the talking. Then Reilly endorsed his check for $872.90 and presented it to the bank, requesting them to open an account for that amount in the joint names of Faulkner and Reilly. This the bank did, presenting the passbook to Reilly. The identification card was signed by both Reilly and Faulkner. Then Reilly filled out a check for $650 and presented it to the bank. The check was not taken in the formal way 'for collection only,' but was cashed and charged against the joint account. Faulkner did not endorse the check with which the account was opened; nor did he have anything to do with drawing or cashing the $650 check. He obtained no cash whatever from this joint account, or from the $650 check cashed. The $872.90 check, with which the account was opened, was forwarded to the Anglo California Trust Co. at San Francisco, upon which it was drawn, for collection, and payment was refused for lack of funds. The check was undoubtedly a fictitious check. Reilly pocketed his $650 and disappeared."

The defendant bank thereupon applied the $624.25 standing on its books to the credit of the plaintiffs to payment of the overdraft on the open account of E. C. Reilly and W. J. Faulkner, and plaintiffs prosecuted this action to recover that amount of money from the bank as having been wrongfully and unlawfully applied to recoup the bank for its losses incurred in cashing Reilly's check for $650. The card referred to by the learned trial court in its opinion above quoted is in words and figures as follows:

"Faulkner W. V. or Reilly E. C. Date May 31, 1922. 1–43.

"All deposits now or hereafter to be made by us or either of us, with the Bank of Italy to the credit of the above account, are and shall be deposited by us and received by said bank upon the agreement that the same be paid to either,

or the survivor of us, and that such deposits and any additions thereto made by either of us, after the making thereof , shall become our property as joint tenants, and that the same, together with all dividends thereon, shall be held for the exclusive use of us, and may be paid to either of us during the lifetime of both or to the survivor after the death of one of us, and such payment, and the receipt or acquittance of the one of us to whom such payment is made shall be a valid and sufficient release and discharge of said bank.

"W. J. FAULKNER
"Signature

"Eldridge, Cal., References.

"E. C. REILLY
"Signature
"References, same."

The theory upon which the bank acted in transferring the savings deposit of the Faulkners to the Reilly account appears to have been on the assumption that the relationship of debtor and creditor existed between W. J. Faulkner and the bank; that Faulkner was responsible for Reilly's actions and, in some manner, was guilty of fraud and misrepresentation in introducing Reilly to the bank and accepting the position of a joint tenant in and to the Reilly-Faulkner account.

[1] It will be noted that the agreement signed by Faulkner and Reilly and left with the bank authorized either one of the parties named to withdraw from the bank the entire sum represented by the account as completely and fully as though the other party had no interest therein. Nor is there anything in the agreement which authorized either one of the parties to draw any sum of money other than as the same were or should be deposited to the credit of said account. There is nothing in the agreement which authorizes either party to overdraw the account represented by the deposit or which authorized the bank to permit either party to overdraw the account and charge such overdraft to the other party. There is nothing in the agreement by which either party guaranteed to pay any overdraft to the bank or repay the bank any sum of money whatsoever on account of moneys withdrawn therefrom not represented by deposits previously

made. Thus the principle of law applicable to joint tenancy, as stated in 33 C. J. 913, would seem to apply: "As a general rule, an act or contract by one joint tenant respecting the joint property without the authority or consent of his cotenants cannot bind or prejudicially affect the latter."

The appellant in this case relies for reversal upon two sentences appearing in the case *Popp* v. *Exchange Bank*, 189 Cal. 296, at page 300 [208 Pac. 113, 115], where the court appears to have been considering an overdraft in connection with an account opened in the names of Lenora S. Popp and J. Popp, her husband. "The account was in the names of the plaintiff, Lenora S. Popp, and J. Popp, and was opened with money belonging to plaintiff, by the deposit of checks payable to her. She thinks she never drew any checks against the account, and in any event, not more than one or two; nevertheless, the overdraft was in law as much her indebtedness as that of her husband." The overdraft was occasioned by checks drawn by the husband. No authorities are cited in support of this statement, and no reasons are given or circumstances pertaining to the deposit upon which the conclusion is based. Whether there was any course of dealing from which the bank was authorized to allow overdrafts on the part of the husband or whether there were any directions which amounted to an authorization on the part of the wife to the husband to create an overdraft, or whether the above language is intended as an abstract statement of the law irrespective of its application to the particular case, we cannot ascertain from the language of the opinion. We do not think it controlling in the instant case, however, from the fact that the writing signed and delivered by Faulkner to the bank limited the authority of the bank in making payments to the amount of the deposit, and such sums as might be added thereto, and also, in effect, provided that the bank might deal with Reilly as though he, Faulkner, had no interest therein. The writing is at once an authorization and a limitation.

[2]    The right of a bank to charge the amount of a dishonored check back against the account of a customer is fully settled in this state. (*Plumas County Bank* v. *Smith & Co.,*

165 Cal. 133 [47 L. R. A. (N. S.) 552, 131 Pac. 360].)    **[3]** It is also clearly established that where a bank accepts a check without protecting itself by taking the check merely for collection, the title to the check passes absolutely to the bank. (*Plumas County Bank* v. *Smith & Co., supra; Newmark G. Co.* v. *Merchants Nat. Bk.,* 166 Cal. 208 [135 Pac. 958]; *Gonyer* v. *Williams,* 168 Cal. 454 [143 Pac. 736], and 4 Cal. Jur. 194.)    **[4]** It seems to be well-settled law that an overdraft is in legal effect a loan of that much money by the bank to the drawer of the check. (*Hennessey Bros. & Co.* v. *Memphis Nat. Bank,* 129 Fed. 557 [64 C. C. A. 125]; 7 C. J. 541 and 682; 4 Cal. Jur. 279; *Prowinsky* v. *Second Nat. Bank,* 49 App. D. C. 363, 265 Fed. 1003 [12 A. L. R. 358, and annotations thereto].)    **[5]** It also seems to be uniformly held that the liability of an individual presenting a check to a bank for cashing depends upon the relationship of indorser and indorsee. (*Burton* v. *United States,* 196 U. S. 283 [49 L. Ed. 482, 25 Sup. Ct. Rep. 243, see, also, Rose's U. S. Notes], *Aebi* v. *Bank of Evansville,* 124 Wis. 73 [109 Am. St. Rep. 925, 68 L. R. A. 964, 102 N. W. 329], *Ayres* v. *Farmers & Merchants Bank,* 79 Mo. 421 [49 Am. Rep. 325], and *Noble* v. *Doughten,* 72 Kan. 336 [3 L. R. A. (N. S.) 1167, 83 Pac. 1048].)    The liability so created is thus referred to in Morse on Banks and Banking, fifth edition, section 357: "It is not an uncommon thing for a depositor to undertake to overdraw his balance and if he be a depositor in good standing and repute and a good customer of the bank, his overdraft may be very probably overlooked by it. Of course such payment is made by the bank wholly upon its risk and in sole reliance upon the ability of the drawer to make remuneration. In fact it is nothing else but a loan and a loan of a very dangerous and irregular description wherein the bank has no security whatsoever beyond the right of action against the drawer."

The liability of the Faulkners cannot be predicated upon the theory of the relationship of principal and agent existing.    **[6]** Where a principal authorizes an agent to collect money and draw and indorse checks, the law is that such authorization does not empower the agent to creat an overdraft. (*Union Bank* v. *Mott,* 39 Barb. (N. Y.) 180.)    **[7]** Nor do we think there is anything in the case upon which the

principle of estoppel may be invoked.  The court has held
that Faulkner was entirely innocent and had no knowledge
of any fraud or intended fraud by Reilly; that he made no
representations in regard to the check and, in fact, it appears
that Faulkner had no knowledge whatever of the check save
and except that Reilly told him of its existence and of his
desire to deposit the same and to make the arrangement
which appears in the opinion which we have quoted from the
learned trial court.  At the time of the presentation of the
check to the cashier of the defendant bank Faulkner appears
to have taken no part other than to introduce Mr. Reilly.  It
appears that the man that Faulkner introduced was in fact
the man Reilly.  He had theretofore worked on the state
farm at Eldridge and that Faulkner was not representing
to the bank any person other than Mr. Reilly himself.  We
have been cited to no authorities which hold that the mere
introduction of a prospective depositor to the officials of a
bank renders the one performing that function liable on ac-
count of any checks presented to the bank by the person so
introduced or liable for any overdrafts or illegal withdrawal
of the funds of the bank made by such person.  Faulkner
did not indorse the check.  It does not appear that he ever
saw the check and there is nothing in the testimony showing
any representations whatever by him in relation thereto.  In
*Wood* v. *Blaney,* 107 Cal. 291 [40 Pac. 428], the supreme
court approved five propositions essential to an estoppel: 1.
There must have been a false representation or a concealment
of material facts; 2. The representation must have been made
with knowledge, actual or constructive, of the facts; 3. The
party to whom it was made must have been ignorant, actu-
ally and permissibly, of the truth of the matter; 4. It must
have been made with the intention, actual or constructive,
that the other party should act upon it; 5. The other party
must have been induced to act upon it.  The cashier of the
defendant bank testified that he relied upon the introduction
and the fact that Faulkner was a customer of the bank and
had a deposit therein, thus expressly negativing the assump-
tion that he acted upon any representation of Faulkner what-
ever.  Faulkner introduced Reilly and Reilly was actually
the man whom Faulkner introduced.  Hence, there was no

misrepresentation in that particular. That the cashier thought that Faulkner or any other person was liable for the actions or transactions had by the person introduced to the bank with the bank was simply the mistake or error of the bank cashier.

The respondents urge with considerable force that the cashier of the $650 check drawn by Reilly did not create an overdraft, but whether it did or did not, we do not very well see how the legal relations of the parties are in anywise altered in this case. The bank, under and by virtue of the writing signed by Faulkner, was authorized, so far as Faulkner was concerned, to pay out certain moneys and nothing more. These moneys were represented by a check in this instance with which he had nothing to do and of which he was simply an innocent victim used as a foil for the purpose of illegally extracting funds from the bank. In this behalf he was no whit more negligent and in fact not of the same degree negligent, if negligent at all in anything he did, as was the defendant bank in not taking the precaution of receiving and accepting the check for purposes of collection only and in such a manner as to enable it to ascertain its value or valuelessness before it paid out money on account thereof. In so doing the bank took the chances of, in law, becoming the owner of a worthless piece of paper when it might have fully safeguarded itself in this instance by taking the simple precaution before mentioned, and there are no circumstances in this action upon which it can claim to have been defrauded by reason of any actions or representations on the part of the plaintiffs in this cause. If the theory of the appellant is correct that the overdraft was created by Reilly, we are still of the opinion that the circumstances attending the deposit herein did not give the bank any authority whatsoever to allow an overdraft or to loan money to either one of the parties in whose names the account was opened. The whole case resolves itself into this statement: It was a fraud, pure and simple, practiced by Reilly, without any knowledge, connivance, or assistance on the part of Faulkner, and the defendant was in a position where it might have protected itself, as herein stated, but did not do so, and we do not think it is now in a position to recoup its

losses from the plaintiffs in this case.    The judgment and the order of the trial court are affirmed.

Finch, P. J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1924.