[Civ. No. 20706. Second Dist., Div. One. July 11, 1955.]

TORRANCE NATIONAL BANK (a National Banking Association), Respondent, v. ENESCO FEDERAL CREDIT UNION (a Cooperative Association), Appellant.

Spray, Gould & Bowers and Robert E. Ford for Appellant.

Donald Armstrong and McLaughlin & Casey for Respondent.

WHITE, P. J.—Defendant, Enesco Federal Credit Union, a corporation (hereinafter called Enesco), has appealed from a judgment for $12,898.51 in favor of Torrance National Bank (hereinafter called the Bank).

The Bank sought to recover $19,516.93, the amount by which Enesco's account with the Bank was allegedly overdrawn. Enesco cross-complained for $7,628, the amount of a check made to its order, endorsed "Pay to the order of Torrance National Bank for Deposit to the account of Enesco Federal Credit Union," for which the Bank, upon its presentation by Joseph Alden, Enesco's treasurer, paid him the cash. Enesco cross-complained also for $10,483.07, the amount of its deposit which was applied by the Bank toward the payment of a certain $30,000 check to the Bank, drawn on Enesco's account, signed by said Alden, and presented by him to the Bank in exchange for $30,000 cash. The amount of the judgment is the difference between $19,516.93, with interest thereon from April 3, 1953, and $7,628, with interest thereon from March 31, 1953.

No appeal having been taken by the Bank, we will not consider or further discuss the court's decision that the Bank "is indebted to defendant in the sum of $7,628, together with interest on said sum from March 31, 1953, at the rate of 7 percent per annum."

Enesco is a credit union composed of some of the employees of National Supply Company (hereinafter called National), an industrial plant located in the city of Torrance. Enesco's office was in a small building on National's premises. Early in 1949, Joseph Alden became the treasurer of Enesco. The act under which Enesco was incorporated provided that "The Treasurer shall be the general manager . . . shall have custody of all funds . . . shall sign all checks, drafts, notes, and other obligations of the credit union. . . ." (Title 12, U.S.C.A., § 1761.) Enesco's by-laws (Title 12, U.S.C.A., § 1758) provide that the treasurer shall be the general manager under the control and direction of the board of directors.

On September 26, 1950, Enesco's board of directors passed a resolution and furnished a copy thereof to the Bank au-

thorizing Joseph Alden or his wife, as treasurer and assistant treasurer, respectively, ''to sign all checks and drafts of this corporation. . . .''

Without conflict, the evidence is that at the close of business on Thursday, April 2, 1953, Enesco had on deposit with the Bank the sum of $10,483.07; that after 3 o'clock that afternoon, while the Bank was closed, Alden left with the Bank's teller an unnumbered check, dated April 3, 1953, drawn on the account of Enesco for $30,000, payable to the Bank, and its teller delivered to Alden $30,000 in cash packed in his own valise; that a few minutes later, while Alden was on the way from the Bank to Enesco's office, he was robbed of the $30,000; that on April 4, 1953, the check was charged by the Bank to the account of Enesco, creating an overdraft of $19,516.93; that the $30,000 was intended by Alden to be used in his own business of cashing paychecks and charging therefor; that Alden had been expressly directed by Enesco's board of directors not to use any of the corporation's funds for cashing paychecks; that the Bank knew Alden intended to use the $30,000 for cashing paychecks, had made no inquiry as to his authority, but did not know that Alden had been directed not to use Enesco's money for that purpose; that the check had been left by Alden with the Bank's teller pursuant to his understanding with the Bank's vice president and the vice president's instructions to the teller, that the check would be held in the teller's cash drawer without entering it in the Bank's records to give Alden time to cash pay checks for National's employees, deposit them with the Bank in another account, and exchange his check on such other account for the Enesco check so held by the Bank.

The other facts will be stated in connection with the discussion of the questions to which they are pertinent.

The Bank has the right to assume that any ''check, receipt, or order of withdrawal,'' drawn by an agent ''in the authorized form and manner . . . was drawn for a purpose authorized by the depositor and within the scope of the authority conferred upon such person.'' (Fin. Code, § 953.)

Appellant contends that the paper involved was not drawn ''in the authorized form and manner'' for three reasons: (1) It was unnumbered; (2) It was postdated, and (3) Its amount was in excess of the balance of Enesco's deposit with the Bank.

Numbers on checks, like notations of the purpose for

which checks are drawn, are memoranda for the convenience of the maker and the absence thereof does not "restrict the Bank's right to charge the maker's account with the amount thereof." (9 C.J.S., p. 677; *Boston Ins. Co.* v. *Wells Fargo Bank & U. Tr. Co.*, 80 Cal.App.2d 59, 67 [181 P.2d 84].)

An essential characteristic of a check is that it be payable on demand. (Civ. Code, § 3265a; 7 Am.Jur. 794, § 10; *Minturn* v. *Fisher*, 4 Cal. 35.) However, a postdated check is within the phrase "checks and drafts" used in the resolution on the signature card furnished the Bank by Enesco. It is also an "order of withdrawal" authorizing the Bank to assume authority as provided in Financial Code, section 953. Therefore, under the facts and circumstances of the instant action, the postdating of the check has no significance.

An overdraft is in legal effect a loan by the bank to its depositor. (8 Cal.Jur.2d 108; *Faulkner* v. *Bank of Italy*, 69 Cal.App. 370 [231 P. 380]; *Popp* v. *Exchange Bank*, 189 Cal. 296 [208 P. 113.)

"Where a principal authorizes an agent to collect money and draw and indorse checks, the law is that such authorization does not empower the agent to create an overdraft." (*Faulkner* v. *Bank of Italy, supra,* 69 Cal.App. 370, 376.)

Respondent urges that the holding in the Faulkner case has no application to the case at bar because in the Faulkner case the written agreement on the signature card of joint tenants "authorized either . . . to withdraw . . . the entire sum represented by the account . . ."; the agreement did not authorize "either to overdraw the account"; and "there is nothing in the agreement by which either party guaranteed to pay any overdraft."

Examining the signature card furnished the Bank by Enesco in the instant action, we find that Alden was authorized to sign "check and drafts." Section 953 of the Financial Code gave the Bank the right to assume that "any check, receipt or order of withdrawal" signed by Alden was within the scope of his authority. "The original and fundamental idea and purpose" of checks, drafts and orders of withdrawal is that "the drawer has funds or effects in the hands of the drawee," and orders drawee to pay a portion or all of such debt or deposit to payee. (7 Am.Jur. 790, § 6.) Ordinarily, the bank is not obligated or expected to honor any check, draft or order of withdrawal for

an amount greater than the deposit against which it is drawn. The resolution of Enesco, copy of which was furnished the Bank on its signature card, as was said in the Faulkner case, *supra,* was "at once an authorization and a limitation." It contains no language authorizing Alden to borrow from the Bank for the account of Enesco, and no agreement on the part of Enesco to repay to the Bank any overdraft created by Alden's check or draft. Nor, do we find any language in section 953 of the Financial Code which gives the Bank the right to assume that Alden was authorized to overdraw Enesco's account or to borrow money for its account.

Respondent urges that the instant action is further distinguished from the Faulkner case, *supra,* by the fact that "there was nothing in that case on which any ostensible agency could be predicated."

In the instant action, the court concluded "That Joseph Alden had ostensible authority from Enesco to withdraw the $30,000 which he withdrew on April 2, 1953." That conclusion is based upon seven pages of detailed findings, most of which we will not repeat here. There is no finding, and no evidence in the record, to the effect that Enesco knew of or should have suspected the existence of the oral understanding between Alden and the Bank's vice president, or the custom which they had developed, pursuant to which, on the day before each of National's paydays from October, 1950, to April, 1953, Alden had left an unnumbered, postdated check of Enesco with the Bank to be held without entry in its records and picked up by Alden the next day. There is no finding, and no evidence in the record, that Enesco's bank statement had ever shown an overdraft, except the one created on April 4, 1953, by the $30,000 check involved on this appeal.

As we have hereinbefore indicated, in the absence of facts creating an estoppel as against the Bank, if Enesco had had $30,000 on deposit with the Bank on April 3, 1953, the date of the check, or on April 4, 1953, the date of the presentation of the check by the Bank as payee for payment by the Bank as drawee, the Bank was expressly authorized, under the provisions of its signature card and of section 953 of the Financial Code, to charge said check against the account of Enesco; but, Alden's actual authority did not extend to the creation of an overdraft.

"Ostensible authority is such as a principal, intentionally

or by want of ordinary care, causes or allows a third person to believe the agent to possess. (Civ. Code, § 2317.) ██ In the field of contracts, "the doctrines of ostensible agency or agency by estoppel are not based upon the representations of the agent but upon the representations of the principal." (*Boren* v. *State Personnel Board*, 37 Cal.2d 634, 643 [234 P.2d 981].) It was found that the Bank in the instant action never had or sought any communication from Enesco, except through Alden; and that Enesco's only communication with the Bank was the signature card authorizing Alden and his wife, as its treasurer and assistant treasurer to sign its checks; and further that the Bank "never at any time had any knowledge or notice of any limitations upon the right of Joseph Alden to use monies of the defendant which were on deposit with plaintiff in connection with the check cashing activities described in these findings of fact."

██ There is no finding and no evidence in the record that the Bank had any knowledge that Enesco ever had engaged in the business of cashing paychecks for National's employees. The Bank's vice president testified as a witness for the Bank as follows:

"Q. Did you know at any time prior to April 3rd of 1953, that Joseph Alden had any interest in any check cashing operation? A. I knew he was check cashing. I didn't know what person or what it was. Q. Well, tell us what you did know about that. A. Well, that has to go back a long while when at one time some of the armored cars came down and were cashing checks at the National Supply. They ceased their operations and Mr. Alden came over and said—— . . . I don't exactly know the exact date now. He said that unless he could make some arrangements to continue the check cashing business for the Federal Credit Union, they would have no way of operating. I don't know what he meant by it. That's the sum and substance—that's what he came over and told us.

. . . . . . . . .

"Q. Now you made arrangements with Joseph Alden where he could come in and obtain monies to cash checks with, didn't you? A. That's right. Q. And under those arrangements you told him that he could leave a check on the Credit Union with the girl at—the teller there—take the cash; and then when he returned the checks which he had cashed, that the check of the Credit Union would be returned to him? A. That's right."

The evidence is also without conflict and the court found that said practice of obtaining the money for Enesco's check to be so held without entry was commenced "at some time after the 17th day of August, 1950 and during the year of 1950." There is no finding as to the increasing amounts, but the evidence is without conflict that "he started out getting amounts of five thousand. And then they were increased to ten thousand, and so forth. And finally up to thirty thousand." The evidence also shows without conflict that for at least six months prior to April, 1953, the amount of said checks had been $30,000 and that each of said $30,000 checks would have overdrawn Enesco's account if it had been charged in the regular manner.

The evidence is also without conflict, and the court found that on the day after National's payday Alden would bring to the Bank the checks he had cashed, deposit them—*not in Enesco's account upon which he had drawn the $30,000 check—but in another account, which would be charged upon the return of the Enesco check.*

The record is devoid of any showing that Enesco knew or had reason to suspect that its money or credit was being used in any way in Alden's check cashing business, or that Enesco was ever informed that the Bank was holding in its teller's cash drawer Enesco's check which, if presented for payment, would create an overdraft.

There is no finding of any act or omission on the part of Enesco which could have led the Bank to erroneously assume that Alden had authority to overdraw the account of Enesco.

Respondent urges that "The fact that the check created an overdraft does not alter the position of the parties in any way; particularly where overdrafts were customary in connection with these transactions." None of the cases cited by appellant in this connection is determinative of the appeal now before this court. As stated by respondent, appellant's credit had been used in the same manner for a period of years; but not one of the unnumbered, postdated checks so drawn by Alden on Enesco's account and left in the Bank teller's cash drawer, which would have created an overdraft if charged to appellant's account, had ever appeared on any statement sent to Enesco. Enesco had no knowledge of such practice, and could not have acquiesced therein.

In the case of *Hill* v. *Citizens Nat. Trust & Sav. Bank*, 9 Cal.2d 172 [69 P.2d 853], the plaintiff and appellant had purchased land on contract from a corporation, other than

the bank, had been told that the bank had title to the land and that seller was acting as the bank's agent. Appellant had made substantial payments on the purchase price to such assumed agent and had expended several thousand dollars in improving the lot, when the trust deed of the large tract of which said lot was a part was foreclosed. Up to the time of foreclosure, appellant had not communicated with the bank in any way. It was there held that the seller was neither the actual nor ostensible agent of the bank. At page 177, the court said: " 'A third person, such as appellant, is not compelled to deal with an agent, but if he does so, he must take the risk. He takes the risk not only of ascertaining whether the person with whom he is dealing is the agent, but also of ascertaining the scope of his powers. The rule is cogently stated in Mechem on Agency, second edition, section 743, page 527, as follows: "An assumption of authority to act as agent for another of itself challenges inquiry. Like a railroad crossing, it should be in itself a sign of danger and suggest the duty to 'stop, look and listen.' It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it." ' " (*Ernst* v. *Searle,* 218 Cal. 233, 240 [22 P.2d 715, 717].)

In the Hill case, *supra,* the purchaser built upon one of the lots in the subdivision to which the defendant had title, and, although the bank had posted a notice of nonresponsibility, it had no actual knowledge of the deal made between the assumed agent and the purchaser, and was held not to have been negligent in failing to inquire or to warn the purchaser of the agent's lack of authority. In the instant action, although Enesco had authorized Alden to *withdraw* its entire deposit, it had no knowledge of the Bank's custom of loaning money to Alden each payday. It had made no representation which might lead the Bank to believe Alden had power to *overdraw* its account, or to borrow money for it. The Bank dealt with Alden, himself. It therefore remained for the Bank, as in the ordinary case, to inquire into the extent of Alden's authority. Such inquiry would have prevented the loss which occurred.

The question whether an agent is acting under an ostensible authority is one of fact. (2 Cal.Jur.2d 708.)

Even though the finding of ostensible agency in the instant action appears in the conclusions of law, it is nevertheless entitled to the weight usually given a finding of fact, and if there is any substantial evidence in the record to sustain it as a finding of the trial court the question on appeal can go no farther.

Respondent's brief calls our attention to no evidence in the record tending to prove any act or omission on the part of Enesco upon which the Bank could reasonably have based its belief that Alden had authority to overdraw Enesco's account. We have carefully examined the entire record on appeal and there is none.

True, the court found "That the monies thus obtained by Joseph Alden were mingled with monies of the defendant in the defendant's office and place of business and were not kept separate and apart from other monies maintained by the defendant in its office and place of business for the purpose of making loans to its members and repaying deposits made by its members. . . ." The only evidence we have been able to find in the record in this regard is the following testimony of Joseph Alden:

"A I used whatever funds were in the office for cashing whatever checks were presented. There was no distinction made as to 'this money is for this and this money is for that.' Q But you would then replenish the cash fund in the union. If you use their money temporarily, you'd replinish it? A At the end of the day when I balanced my cash, the change fund was set up to its original figure."

The testimony and finding concerning that practice fall far short of showing that Enesco received or retained or benefited by the use of the moneys so loaned by the Bank to Joseph Alden. And, from Alden's description of his handling of the money, it is clear that at the end of the day when he balanced his cash, no trace of such practice remained in Enesco's office or records. None of the $30,000 Alden received for the check involved in this appeal ever reached Enesco's office.

Enesco's account with the Bank was at all times herein mentioned carried in its true corporate name, "Enesco Federal Credit Union."

Large portions of the reporter's transcript, the findings, and the briefs on appeal concern the opening of a bank

account in October, 1950, by Alden and his wife. At that time, the Aldens signed and delivered to the Bank the signature card here quoted:

"Joseph R. Alden, president or Lila M. Alden, treasurer, of this Association are hereby authorized to sign all checks and drafts of this Association drawn on Torrance National Bank, Torrance, California, and that each of them is hereby authorized to endorse for deposit checks and drafts payable to this association.

"I hereby certify that the foregoing is a correct copy of a resolution duly adopted by the board of directors of the (1500) *Enesco Service Fund* at a regular meeting of said board held October 10, 1950, and that said resolution has not since been repealed or amended.

"Witness my hand and seal of said association.

"Dated: October 10, 1950

(signed) Lila M. Alden, Secretary."

It was in this account that the payroll checks cashed by Alden were deposited and it was this account upon which the debit was made on each occasion when the Enesco check, held without entry in the teller's cash drawer, was returned to Alden.

The court found:

"That the statutes of the United States with respect to the formation and operation of federal credit unions describe such organizations as 'associations', and the signature card which Joseph Alden presented to plaintiff at the time that the account was opened in the name of Enesco Service Fund was in such form as to cause plaintiff to believe that Joseph Alden and Lila M. Alden were officers of such an association, and that the bank account opened under the name of 'Enesco Service Fund' was an auxillary account of Enesco Federal Credit Union. That plaintiff did believe at all times up to a date after April 3, 1953, that Joseph Alden, in withdrawing monies for his check cashing operation, including the $30,000.00 described in the Findings of Fact herein, was acting for and in behalf of the defendant."

There is no finding, and not one iota of evidence, to the effect that Enesco ever heard of any bank account in the name of "Enesco Service Fund." The Bank did not so inform Enesco, or question Alden's authority to so use its name for his own personal account. Certainly, under these circumstances, Enesco cannot be held responsible for the Bank's erroneous belief. ▮ To know its depositors is one

of the duties of the Bank—not of its depositors whose names happen to be similar.

There is no substantial evidence in the record that Alden had either actual or ostensible authority to overdraw Enesco's account with the Bank. Further, the detailed findings of the trial court do not support its finding, in the conclusions of law, that Alden had such ostensible authority.

For the reasons above stated, the judgment in favor of the Bank should be reversed.

A further reason for reversing the judgment is that, even if the evidence were otherwise sufficient to support a judgment based on Alden's ostensible authority to overdraw Enesco's account, the Bank was negligent in failing to heed the ''stop, look and listen'' warning when Alden requested that his checks upon Enesco's account be held without entry and returned to him.

As said in *Citizens State Bank* v. *Western Union Tel. Co.*, 172 F.2d 950, 952: ''It is true that a principal will ordinarily be held liable for the acts of an agent acting within the scope or apparent scope of his authority when these acts cause loss to innocent persons. It is equally true, though, that where one acting for another not in, but contrary to, the interest of his principal, causes a loss, the principal will not be held accountable for it to one who aided and abetted, was derelict in his own duty, negligent, in respect to the wrongdoing, or, by his silence when he should have spoken, prevented the principal from ascertaining it in time to prevent the loss.''

The Bank had the right to charge to Enesco's account Alden's checks up to the amount of the deposit, and it did not have the right to so charge checks which would create an overdraft of Enesco's account. Did the Bank have the right to apply the amount of Enesco's deposit in part payment of the $30,000 check drawn by Alden in excess of any actual or ostensible authority given to him?

''In paying out a deposit account of a corporation, the bank must be satisfied that the officer withdrawing the deposit is authorized to do so; if it pays without question, it takes the risk of being held laible for the amount irregularly paid away.'' (7 Am.Jur. 361.) In the transaction which gave rise to this litigation, the Bank was not only the payee who gave Alden the cash, but also the drawee of the check. The Bank knew at the time the cash was paid to Alden that the check, if presented for payment, would

create an overdraft of the account of Enesco. The Bank knew that Alden had no express authority to overdraw the account of Enesco, and no act or omission on the part of Enesco could reasonably have caused the Bank to believe that Alden had such authority. Consequently, both at the time the Bank as payee cashed the check, and at the time the Bank as drawee charged the check to the account of Enesco, the Bank knew Alden had exceeded his authority in drawing a check on the account of Enesco for $30,000. If the Bank had made any inquiry before paying out the cash, there would have been no loss. It therefore seems only fair that the Bank should not be permitted to keep the amount of Enesco's deposit which it applied in part payment of said check; and Enesco should not be held responsible for payment of the whole or any part of the unauthorized check under the circumstances shown by the record on this appeal.

"When an agent exceeds his authority, his principal is bound by his authorized acts so far only as they can be plainly separated from those which are unauthorized." (Civ: Code, § 2333.)

The transaction now being considered involved only one check. It was unauthorized. The fact that any check for an amount less than or up to the amount of the deposit would have been authorized does not alter the fact that the check involved in the instant action was unauthorized. It is apparent, therefore, that to permit the deposit to be applied in part payment of the check would not only do violence to the intent of the Legislature expressed in section 2333 of the Civil Code, but would violate recognized principles of equity and justice.

The appeal from the order denying defendant's and cross-complainant's motion to vacate judgment and enter a different judgment is dismissed.

The judgment for plaintiff is reversed and the court below is directed to enter a judgment in favor of defendant on its cross-complaint for $18,111.07 together with interest on $7,628 thereof from March 31, 1953, and interest upon $10,483.07 thereof from April 4, 1953.

Doran, J., and Drapeau, J. concurred.

A petition for a rehearing was denied August 1, 1955, and respondent's petition for a hearing by the Supreme Court was denied September 8, 1955. Shenk, J., and Traynor, J., were of the opinion that the petition should be granted.