## The National Bank of Slatington v. Derhammer (No. 1)

*William A. Steckel,* for plaintiff.

*Mark Gearhart* and *Paul A. McGinley,* for defendant.

HENNINGER, P. J., January 6, 1958. — Plaintiff brought this action in assumpsit against defendant averring that on March 4, 1957, she signed a contract establishing a joint account with one Paul M. Barry at plaintiff bank, that the first, and only, deposit was

a check for $4,950 drawn by Eli J. Brannon in favor of Paul M. Barry, the other signatory to the joint account, and payable at Manufacturing Trust Company of New York, that plaintiff paid defendant or her cosignatory $150 in cash against the amount of the check, that on March 6, 1957, $2,800 was paid to the "account owners" on a check signed by "one of the joint makers", that the original check was drawn upon a fictional bank, wherefore this suit to recover the deficit in the amount of $2,950.

Defendant filed preliminary objections: (1) By way of demurrer; (2) by way of motion for a more specific pleading in that (a) deposit slip not attached, (b) failure to state whether defendant was a party to any of the instruments involved, (c) whether the $4,950 check was legally credited to the account and (d) on what theory defendant is being sued.

In passing upon a demurrer, we are limited to the facts as pleaded by plaintiff and we must accept them as verity: Hexter v. Haverford Township, 169 Pa. Superior Ct. 168, 170. Furthermore, summary judgment will not be entered excepting in a clear case: Roth v. Golden Slipper Restaurant & Catering, Inc., 167 Pa. Superior Ct. 558, 562; Lacy v. East Broad Top Railroad & Coal Co., 168 Pa. Superior Ct. 351, 353.

We find then from the facts pleaded and from the exhibits attached that, in addition to the above stated facts, the joint account was in the joint names of defendant and one Paul M. Barry; that, of the two, Barry's name alone appears on the invalid check upon which the deposit and subsequent withdrawals were based, but that the signature card stated that the initial deposit was the joint property of both.

At the argument, defendant assumed that all of the chicanery was the work of Barry and that he reaped all of the fruits of it. That may well prove to be the case, but it is not the state of facts upon which we

must decide the demurrer. We have no doubt of defendant's innocence of wrongdoing, but the complaint pleads that *she* deposited the invalid check and that *she* received the proceeds of the withdrawals against it.

If that be true, or if defendant participated even innocently in negotiation of the $4,950 check, she might be sued for the money lost by reason of the dishonored check. This would be true although, as we know, it was only Barry who endorsed the invalid check and although, as we have been informed, it was only he who signed the $2,800 check. Whether or not plaintiff, through any act of its own, has forfeited its right to recover or whether or not defendant actually received any of the money is a matter of defense.

In the light of the motion for a more specific pleading, it becomes necessary for us to rule upon the proposition advanced by plaintiff that every cosignatory to an account is answerable out of his own funds over and above those entrusted to the joint account, for transactions made by his cosignatory which may result in an overdraft. If that were the law, plaintiff's complaint would be sufficient; if it is not the law, other facts must be specifically pleaded to impose liability upon defendant.

While article 4 of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §4-101 to 4-407, is entitled "Bank Deposits and Collections," it deals almost exclusively with collections of checks and drafts. To rule as plaintiff would have us rule would endanger not only the cosignatory's balance in the account, to which he has consented, but all of his other assets as well, to which he has not consented. Every cosignature would constitute a partnership without limits as to the liability of one partner for the machinations of the other.

Although in Pennsylvania an overdraft is considered an involuntary loan to the one causing it (Federal

Deposit Insurance Corporation v. Ciaffoni, 176 Pa. Superior Ct. 91, 94), our attention has not been called to any Pennsylvania case which holds that the cosignatory can be held beyond the balance in the account or that the joint deposit makes each cosignatory the agent of the other to borrow money from the bank in this irregular manner: See Pittsburgh v. First National Bank of Sheraden, 230 Pa. 176, 183.

We are not convinced that article 4 of the code intended to impose this new and additional responsibility upon the shoulders of a cosignatory or to change the law of agency, despite the language of section 4-212, 12A PS §4-212, subjecting a customer to refund upon dishonor of an item for collection and section 4-104, 12A PS §4-104, defining a customer as "any person having an account."

Exactly the same situation as in this case was ruled adversely to the bank in Faulkner v. Bank of Italy, 69 Cal. App. 370, 375, 231 Pac. 380, 382. In that case, however, there was no allegation that the proceeds of charges against the invalid check had been received by the cosignatory.

When we come to the motion for a more specific complaint, it is clear that a litigant need not plead the *theory* upon which he sues. It is enough that he pleads facts which in law entitle him to a recovery. Pleading theory might be helpful to court and adversary, but we cannot demand it.

Plaintiff's complaint is obviously drawn so as to avoid showing that Barry and not defendant perpetrated the fraud. In our opinion, plaintiff's case must stand or fall upon some showing of defendant's responsibility for negotiation of the $4,950 check or upon her enrichment through Barry's fraud.

Under these circumstances, we believe that the complaint is not sufficiently specific. Defendant's sig-

nature does not appear upon the invalid check. We should know, therefore, what acts on her part, besides the mere fact of cosignature, are relied upon by plaintiff to fasten liability upon this defendant. If, on the other hand, she is to be held because she received moneys based upon a dishonored check, we should have a full frank statement naming by name the person or persons who received the money.

Now, January 6, 1958, defendant's preliminary objections by way of demurrer are overruled and her preliminary objections by way of motion for a more specific complaint are sustained, and it is ordered that plaintiff file, within 20 days after service of this order on its counsel, a more specific complaint in accordance with this opinion.