Veronica Nielson, Plaintiff-Appellee, v. Suburban Trust & Savings Bank, a State Banking Institution of the State of Illinois, Defendant-Appellant.

**Gen. No. 48,570.**

First District, Third Division.

September 19, 1962.

Rehearing denied October 10, 1962.

Shorey, Shorey & Floberg, of Chicago (Clyde E. Shorey, Clyde E. Shorey, Jr. and Frederic O. Floberg, of counsel), for appellant.

Ransom & Ransom, of Oak Park (Robert C. Ransom and Robert M. Ransom, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Veronica Nielson, hereinafter referred to as the plaintiff, brought an action in the Municipal Court of Oak Park against Suburban Trust & Savings Bank, hereinafter referred to as the defendant, to recover the sum of $2,977.52 which the plaintiff alleged the defendant had improperly charged against her account. The case was tried without a jury, and on May 31, 1961 the trial court entered judgment for the plaintiff for $2,977.52 plus the usual rate of interest to which the plaintiff would have been entitled if the money had remained in the bank. From that judgment the defendant takes this appeal.

On September 26, 1959 the plaintiff and Clifford Nielson were married. On October 13, 1959 they opened a joint savings account with the defendant. At the time they opened the account they signed a card on which the following appears: "JOINT ACCOUNT PAYABLE TO THE ORDER OF EITHER, OR THE SURVIVOR. The Undersigned hereby agrees to the By-Laws, Rules and Regulations governing the Savings Department of SUBURBAN TRUST & SAVINGS BANK, and further agree that all deposits in this account, or any part thereof, or any interest or dividend thereon, may be paid to any one of the undersigned, whether the other or others be living or not, on the receipt or acquittance of any of the undersigned."

During the early part of January, 1960 the Nielsons were experiencing marital difficulties. The bal-

ance existing in their account on January 14, 1960 was $12,189.27. On that morning the plaintiff went to the defendant and talked to the cashier. She told him that she wanted to draw out her own money which she had originally put into the joint account and told him the amount that she intended to withdraw. She also told him that her husband had the savings account book. The cashier took the plaintiff to the teller's cage and told the teller that she should be permitted to withdraw $9,166.79 from the joint account. This was done. She deposited the money in her own name in another savings account and a new bank book was issued to the plaintiff. After the withdrawal the balance in the joint account was $3,022.48. The next day, January 15th, plaintiff's husband went to the defendant, presented the savings account passbook and made a withdrawal of $6,000 from the joint account. This withdrawal resulted in an overdraft of $2,977.52. The defendant on January 16th tried to reach plaintiff but was unsuccessful. On January 18th the defendant contacted the plaintiff and told her that it was going to charge her individual account with the amount of the overdraft. This was done. The plaintiff then brought suit against the defendant in the Municipal Court of Oak Park.

In defendant's answer it is admitted that "plaintiff stated to an officer of the bank that the said book was in the possession of her husband, that she was having marital difficulties and that she desired to withdraw the sum of $9,166.79 which plaintiff estimated to be the sum deposited by her in said joint savings account at the time it was opened on October 15, 1959, plus interest . . . ."

After the defendant had filed its answer, on April 27, 1961 the defendant filed a motion to transfer the cause to the Circuit Court of Cook County in order to permit the defendant to serve Clifford Nielson and file a third party action against him. This motion the

court denied. After a hearing before the court without a jury the court found in favor of the plaintiff and entered judgment for $2,977.52 plus the usual rate of interest to which the plaintiff would have been entitled if the money had remained in the bank.

This is a case of first impression in this State. No cases have been found by either counsel or by the court which are directly in point.

In this court the defendant urges that the relationship between it and the plaintiff is contractual and that the parties are bound by the terms of the contract.

The only Illinois statute dealing with the subject matter is not found in the chapter of the Illinois Revised Statutes dealing with banks, but is found in chapter 76, "Joint Rights and Obligations," which states in part, in paragraph 2:

"When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made."

"The familiar joint bank account has had an uneasy career in the courts . . . ." In re Estate of Schneider, 6 Ill2d 180, 183, 127 NE2d 445, 447. The courts in most cases have been faced with the determination of the rights of joint depositors or, in the case of death of

228

a joint depositor, of the survivor. In In re Estate of Schneider, supra, the question involved a conflict between the surviving donee-depositor and the estate of the donor-depositor. In that case the court pointed out that the relationships arising in the joint bank account do not readily fit into common law categories. The four unities of a common law joint tenancy are absent, and the fact that either depositor under the contract could withdraw the entire amount was not in accord with the theory of joint tenancy.

Leaf v. McGowan, 13 Ill App2d 58, 141 NE2d 67, was a case involving the right of a judgment creditor to garnish a joint bank account when one of the parties to it was a judgment debtor, and in that case the court quotes the following from Park Enterprises, Inc. v. Trach, 233 Minn 467, 47 NW2d 194:

"This type of account is difficult, if not impossible, to classify under traditional categories of legal ownership. The account is distinguished from a joint tenancy because of the fact that it is joint and several, whereas in a joint tenancy there is joint ownership only. The survivorship feature of the account readily distinguishes it from a tenancy in common, and yet is not sufficient alone to make it a joint tenancy. . . . Since the type of ownership which the bank and its depositors have created by their contract defies classification under traditional concepts of property ownership, we are forced to treat this case as presenting a contract question and must decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it."

In the case before us we are not concerned with the rights of the depositors as between themselves, but our principal consideration is the contract existing between a joint depositor and the bank.

The defendant states the rule to be that where an account is opened in the names of two or more persons with the authority of each to draw checks against the account, an overdraft against the joint account is an indebtedness against each, and in support of that contention cites 5B Mitchie, Banks and Banking, sec 302, p 170 (Perm Ed 1950), where it is stated that where a bank account stood in the joint names of the husband and the wife, an overdraft was the joint debt of both husband and wife, even though all of the checks except one or two had been drawn by the husband. For that statement there is cited only one authority, Popp v. Exchange Bank, 189 Cal 296, 208 P 113 (1922), and as far as the court is informed by counsel or by its own research, that citation is the only one so holding. In that case plaintiff and her husband had a joint account with the defendant bank, which account was overdrawn in the amount of $2,400. To cover the overdraft plaintiff and her husband executed a note payable to the bank and deposited certain collateral as security. When the note was not paid the bank reduced the collateral to its possession. Plaintiff sued to recover the collateral and claimed there was no consideration for the execution of the note by her. The court says:

> "The account was in the names of the plaintiff, Lenora S. Popp, and J. Popp, and was opened with money belonging to plaintiff, by the deposit of checks payable to her. She thinks she never drew any checks against the account, and, in any event, not more than one or two; nevertheless the overdraft was in law as much her indebtedness as that of her husband, and it is the law of this state that a pre-existing debt is a valuable consideration."

Faulkner v. Bank of Italy, 69 Cal App 370, 231 P 380, was decided in 1924. That was a case where an

230

action was brought by plaintiffs for money had and received by the defendant bank in its savings department and credited to the account of the plaintiffs in the sum of $624.25. Faulkner and his wife, the plaintiffs, had a joint savings account with the defendant. The total deposits were $624.25. Faulkner became acquainted with one Reilly. Reilly asked Faulkner to introduce him to the bank, as he wanted to get a check for approximately $800 cashed, and further stated to Faulkner he desired to open an account in the bank and deposit the check in a joint account with Faulkner and, as he would be out of town, Faulkner could deposit any checks which might be received in his absence. Faulkner introduced him to the bank and the identification card was signed by both Reilly and Faulkner. Reilly deposited the $800 check in the joint account and then wrote a check for $650, which was cashed by the bank and charged against the joint account. Faulkner did not indorse the check, nor did he receive any money from the check. The $800 check was bad. Reilly took the $650 and disappeared. The bank applied Faulkner's $624.25 toward payment of the overdraft on the open account of Reilly and Faulkner. Reilly and Faulkner at the time the joint account was opened signed a card which provided, among other things, that all deposits made by them, or either of them, with the bank to the credit of the account are received by the bank on the agreement "that the same be paid to either, or the survivor of us, and that such deposits and any additions thereto made by either of us, after the making thereof shall become our property as joint tenants, and that the same . . . may be paid to either of us during the lifetime of both or to the survivor after the death of one of us, and such payment, and the receipt or acquittance of the one of us to whom such payment is made shall be a valid and sufficient release and discharge of said bank." The two signatures followed. The trial

231

court entered judgment for the plaintiffs and the appeal was taken from that judgment.

The court first points out that the agreement authorized either one of the parties named to withdraw from the bank the entire sum represented by the account as completely and fully as though the other party had no interest therein. The court further says that there is nothing in the agreement which authorized either of the parties to draw any sum of money other than the sums deposited to the credit of said account, that there is nothing in the agreement which authorized either party to overdraw the account represented by the deposit or to authorize either party to overdraw the account and charge such overdraft to the other party, and that there is nothing in the agreement by which either party guaranteed to pay any overdraft to the bank. The court cites 33 CJ 913, which says: "As a general rule, an act or contract by one joint tenant respecting the joint property without the authority or consent of the cotenants cannot bind or prejudicially affect the latter." The court discusses Popp v. Exchange Bank, 189 Cal 296, 208 P 113, previously referred to herein. In its opinion the court says that the statement above quoted from the Popp case was not supported by any authority, nor was it apparent from that opinion that there was evidence in that case of a course of dealings or directions which amounted to an authorization on the part of the wife to create an overdraft. The court further stated it could not tell from the language of the opinion whether the statement was merely set out as an abstract statement of the law or not. The court holds that the Popp case is not controlling in the case before it, and that the agreement of the parties in the case before it is at once an authorization and a limitation. The court then states that the right of a bank to charge back a dishonored check against the account of the customer is fully settled in the State, but that it is also settled

232

that where a bank accepts a check without protecting itself by taking the check merely for collection, the title to the check passes absolutely to the bank. The court also discards the theory of estoppel. The court then says: "The bank, under and by virtue of the writing signed by Faulkner, was authorized, so far as Faulkner was concerned, to pay out certain moneys and nothing more. These moneys were represented by a check in this instance with which he had nothing to do, and of which he was simply an innocent victim used as a foil for the purpose of illegally extracting funds from the bank. In this behalf he was no whit more negligent, and in fact not of the same degree negligent, if negligent at all in anything he did, as was the defendant bank in not taking the precaution of receiving and accepting the check for purposes of collection only, and in such a manner as to enable it to ascertain its value or valuelessness before it paid out money on account thereof." The court affirmed the judgment of the trial court.

In Landretto v. First Trust and Sav. Bank, 333 Ill 442, 164 NE 836, the court says:

> "Joint bank accounts are not uncommon. The question here presented is uncommon so far as precedents disclose. The right to draw and the duty to pay checks against the account rest upon contract. It does not depend upon the ownership of the fund. . . . It is elementary doctrine, often repeated, that the agreement of parties is the law governing their rights unless contrary to some rule of positive law or principle of public policy."

■ The contract entered into between the bank and joint depositors governs their relationship during the life of the depositors. The bank and depositors are equally bound by the contract. In the instant case at the time of the withdrawal by the plaintiff the bank was fully informed that there existed a

233

marital rift between her and her husband; that she was withdrawing all of the money which in her opinion belonged to her individually; and that as far as she was concerned she had no further interest in the joint account. The contract provided that either or both depositors had the right to withdraw all of the deposits in the joint account. While it has been held that where a bank has paid an overdraft it may recover from the drawer (McLean County Bank v. Mitchell, 88 Ill 52), in 5B Mitchie, Banks and Banking, sec 303 (Perm Ed 1950), it is said: "It has been said that the practice of paying overdrafts is based on no authority in sound usage or in law, and should be abolished." It is also stated in section 304: "A bank may, however, be barred by negligence from recovering for overdrafts."

■■ When the defendant bank paid out to Clifford Nielson an amount in excess of the amount on deposit, recovery could not be had from the plaintiff. Here, as in the Faulkner case, there is nothing in the agreement which authorized either party to overdraw the account and charge such overdraft to the other party, nor is there anything in the agreement by which either party guaranteed to pay any overdraft to the bank. The liability cannot be predicated upon the theory of principal and agent since the rule is that where a principal authorizes an agent to collect money and draw or indorse checks such authorization does not empower the agent to create an overdraft. Union Bank v. Mott, 39 Barb 180; Faulkner v. Bank of Italy, supra.

■ If any recovery could be had by the defendant it must be a recovery from Clifford Nielson, the depositor who created the overdraft. There was no negligence on the part of the plaintiff. The plaintiff made a full disclosure to the defendant. The negligence was solely the negligence of the defendant, and

234

as far as the plaintiff is concerned the defendant must be responsible for the loss.

■ The judgment of the Municipal Court of Oak Park is modified by deleting therefrom the language "plus the usual rate of interest to which the plaintiff would have been entitled if the money had remained in the bank," and as modified the judgment is affirmed.

Affirmed as modified.

DEMPSEY, P. J. and SCHWARTZ, J., concur.