# CITY BANK OF HONOLULU *v.* HARRY TENN.

## No. 4914.

MAY 15, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON
AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

In this case, City Bank of Honolulu, plaintiff-appellee, sued its depositor, defendant-appellant Harry Tenn, to recover $6000 that it paid out on an overdraft drawn by Tenn. Tenn contends that City Bank had no authorization to pay a check in excess of the funds he had on deposit. City Bank argues that the check itself authorized it to pay, and that it is now entitled to reimbursement from Tenn for the full amount of the check.

In July, 1964, Tenn left Honolulu for a mainland vacation. In Los Angeles, he met one Gene Hawley, who represented Sonic Educational Products, Inc. Hawley offered Tenn a business deal in which Tenn showed interest. The two were to meet again later to finalize the deal, but Hawley demanded an advance of $6000. Tenn drew a check pay-

able to the order of Sonic Educational Products, Inc., in the amount of $6000, on his personal account at City Bank in Honolulu. Tenn knew when he drew the check that it was approximately $4700 in excess of the funds on deposit in his personal account, and he told Hawley so. He gave the check to Hawley on the express oral understanding that Hawley would not present the check for payment, but would merely hold it as evidence of Tenn's good faith.

Tenn claims that he made a notation on the check, to wit: "not good until contract is completed". This fact, however, was controverted at the trial. Tenn introduced the check into evidence, with the notation on it, but the notation was in a different color of ink than the rest of Tenn's writing on the check. The bank introduced, over Tenn's objection, its microfilm copy of the check, taken in the ordinary course of business, and the notation did not appear on the photocopy.

In any event, while Tenn was still away on vacation the check was deposited in San Diego. When it reached City Bank in Honolulu, City Bank cashed the check, after trying and failing to reach Tenn by telephone in Honolulu. The operations manager transferred $4700 from Tenn's business account (Ala Moana Motel, Ltd.) to Tenn's personal account to cover the amount of the check, which was then charged against Tenn's personal account. Tenn's signature was the only one authorized for either account. After Tenn's return, City Bank transferred $4700 back into the Ala Moana Motel account and transferred $1300 back into Tenn's personal account, pending resolution of the controversy. The $6000 deficit was then charged to the bank's "suspense" account.

Tenn attempted to get repayment of the $6000 from Sonic in California, and Sonic did repay $600, which Tenn turned over to City Bank. However, no further payments were made by Sonic, and when Tenn refused to reimburse

City Bank for the remaining $5400, the bank brought this action to collect it.

The trial court, sitting without a jury, allowed the microfilm copy into evidence over Tenn's objection, and it held that City Bank was entitled to recover the $6000, less the $600 already paid, on the theory that the transaction amounted, in effect, to an authorized loan to Tenn, which he was therefore liable to repay.

The main issue in this appeal is whether the bank had the authority to cash the check drawn by Tenn, in the absence of express authorization to do so. We agree with the trial court that the bank had such authority. The authority was impliedly given by the drawing of the check and its delivery to the payee. This result is in accord with the majority of cases in the United States. Furthermore, it is the view taken by the Uniform Commercial Code, Section 4-401(1), adopted in Hawaii and applicable to all transactions arising after January 1, 1967.

The rule is well set out in the case of *Title Guarantee & Trust Company* v. *Emadee Realty Corporation,* 136 Misc. 328, 240 N.Y.S. 36, 37 (1930).

... Without question, "as between a banking firm and a depositor not a member of the firm, an overdraft is a loan. The payment of the latter's check when no funds stand to his credit is an advance by the firm of its own money, for the repayment of which, with the lawful interest, the customer is liable." Payne v. Freer, 91 N.Y. 43, 48, 43 Am. Rep. 640.

We also agree with that court that "the depositor, having initiated the circulation of the instrument in question, must in conscience and law bear the ultimate consequence thereof." 240 N.Y.S. 36, 37. The same views have been expressed by courts across the country.[1]

---

[1] For example, *see:* Faulkner v. Bank of Italy, 169 Cal. App. 370. 231 P. 380 (1924) ; People's National Bank v. Rhoades, 28 Del. (5 Boyce) 65, 90 A. 409 (1913) ; Turbitt v. Riggs National Bank of Washington,

54

Finally, appellant challenges the trial court's ruling allowing the bank's microfilm copy of the check into evidence over appellant's objection. This objection is not based upon the "best evidence" rule, and in fact could not be so grounded, in view of HRS § 622-4, then R.L.H. 1955, § 224-4, which expressly provides for the admissibility of such evidence. Instead, appellant claims that he did not receive sufficient notification from appellee that this evidence would be presented. It is true that appellant did not learn of this evidence until the trial. It is also true that Rule 17(a)(3) of the Circuit Court of the First Circuit would preclude admission of this evidence if there had been a pre-trial conference, and if plaintiff had failed to disclose its existence at that time, and if the court had found no reasonable grounds for the failure so to disclose. Even when a pre-trial conference is held, however, Rule 17(a)(2), which requires this disclosure, contains an exception for evidence intended to be used in whole or in part for impeachment or in rebuttal or to refresh recollection.

In the present case there was no pre-trial conference, and appellant made no request for the microfilm during discovery proceedings. Rule 17(b) provides as follows:

D. C., 182 A.2d 886 (1962) ; Hennessey Bros. & E. Co. v. Memphis National Bank, 129 F. 557 (6th Cir. 1904) ; Prowinsky v. Second National Bank, 265 F. 1003 (D.C. Cir. 1920) ; Thomas v. International Bank, 46 Ill. App. 461 (1892) ; and Frankenberg v. First National Bank, 33 Mich. 46 (1875).

Furthermore, the rule is in accord with the rule and the policy adopted by the legislature in Hawaii, as expressed in the Uniform Commercial Code, now HRS Chapter 490. Uniform Commercial Code § 4-401(1), HRS § 490:4-401(1) states:

As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft.

The Comment to this section of the code, which also appears in the HRS, states:

*Purposes*—It is fundamental that upon proper payment of a draft the drawee may charge the account of the drawer. This is true even though the draft is an overdraft since the draft itself authorizes the payment for the drawer's account and carries an implied promise to reimburse the drawee.

> When no pre-trial conference is held disclosure of exhibits shall not be required except under discovery proceedings.

Furthermore, appellant has not made a convincing showing of undue prejudice resulting from the late notification. He does not explain how he could have more fully or successfully met this evidence had he known about it further in advance. Both the original check and microfilm copy were introduced in evidence. The notation appears on the original, but not on the copy. Tenn testified as to when he put the notation on the check. The bank's bookkeeper testified as to the microfilming procedure. The issue thus presented, of whether the notation appeared on the check at the time of presentment and payment, was recognized by both parties as a major issue both before and during the trial; it was an issue of fact, and it was resolved by the trier of fact. We cannot see how appellant was prejudiced.

Affirmed.

*L. N. Nevels, Jr.* (*Nevels & Chang* of counsel) for defendant-appellant.

*Yoshimi Hayashi* for plaintiff-appellee.