Hillsborough
No. 7057

CAMBRIDGE TRUST COMPANY

v.

P. GERARD CARNEY AND A. E. CARNEY
a.k.a. ANN E. CARNEY d.b.a. P. GERARD CARNEY & COMPANY

February 28, 1975

*Harold Rosenwald,* of Massachusetts, and *Shaines, Madrigan & Mc-Eachern (Mr. Rosenwald* orally) for the plaintiff.

*McLane, Graf, Greene, Raulerson & Middleton* and *James C. Hood (Mr. Hood* orally) for the defendants.

KENISON, C.J. Plaintiff, a Massachusetts bank, brought this in rem action for recovery of a $5,902.88 overdraft against defendants in their capacities as cosignatories on a joint checking account. Since defendant P. Gerard Carney could not be located, the suit was prosecuted against his wife, Ann E. Carney only. Jurisdiction of the Hillsborough County Superior Court was ob-

tained through the attachment of funds deposited by Ann E. Carney in New Hampshire in the Nashua Savings and Loan Association. RSA 510:4; RSA ch. 512. Trial by jury resulted in a verdict for defendant. *Batchelder,* J., reserved and transferred plaintiff's objection to the denial of its motion for a directed verdict, to particular parts of the court's charge to the jury and to an evidentiary ruling of the court.

The primary question presented is whether a cosignatory on a joint checking account is liable either by virtue of being a cosignatory or by signing an indemnification agreement by reason of an overdraft which she did not cause and from which she derived no benefit.

The facts giving rise to this appeal are somewhat complex. P. Gerard Carney and Ann E. Carney, husband and wife, lived together until marital difficulties resulted in their separation in June 1971. On September 13, 1971, Mr. Carney opened a checking account at the Cambridge Trust Company [hereinafter referred to as Cambridge Trust] in the name of P. Gerard Carney Company only. While the account was in that name it was overdrawn on six separate occasions.

In September 1971, an attorney for Mrs. Carney negotiated a preliminary support agreement with her husband. In order to fulfill his support obligations and to repay money that he had taken from his wife, Mr. Carney indicated that he was willing to give her a substantial amount of money from the P. Gerard Carney Company account at Cambridge Trust in which he had recently deposited a check for $50,071.72. Relying on the deposit slip for $50,071.72 which was shown to her by Mr. Carney, Mrs. Carney accompanied her husband to Cambridge Trust on November 15, 1971, to obtain the funds promised to her.

Testimony indicated that to insure that she would obtain the money, Mrs. Carney agreed to become a cosignatory on the P. Gerard Company account. Accordingly, she and her husband executed two documents on November 15 in order to transform the account into a joint one. They both signed a letter addressed to Cambridge Trust requesting that the account be made joint and that the bank "honor and charge to this account all checks when signed by either of us, . . . and we agree to indemnify and hold you harmless in so doing." They also signed a signature card asking Cambridge Trust to "honor and charge to this account all checks when signed by either of us . . . ." and agreeing to indemnify and hold the bank harmless for doing

so. Thereafter, the account was denominated as the joint checking account of P. Gerard Carney Co., Peter G. Carney and Ann Carney.

On the same day, November 15, Mr. Carney wrote a check to his wife for $38,500 drawn on what had become their joint account. Since the check giving rise to the $50,071.72 deposit had not yet cleared and since her husband had written her worthless checks previously, Mrs. Carney suspected the validity of Mr. Carney's check to her. To protect against this contingency, she opened an individual checking account on November 15 at Cambridge Trust in which she deposited the $38,500 check.

On November 23, Cambridge Trust notified Mrs. Carney that her husband's check to her had cleared. That same day she closed her individual checking account at Cambridge Trust by purchasing two cashier's checks, one for $15,500 and another for $23,000. Twenty thousand dollars of the $23,000 check was deposited by Mrs. Carney on December 1 at the Nashua Federal Savings and Loan Association in the form of a two-year savings certificate.

On February 22, 1972, Cambridge Trust attached $10,000 of the deposit in the Nashua savings account of Mrs. Carney in order to recover for an overdraft of $5,902.88 in the joint checking account created by Mr. Carney who had deposited a worthless check for $7,100 and had drawn $6,000 against it. Undisputed testimony showed that Mrs. Carney never wrote checks on the joint checking account at Cambridge Trust or deposited money in it, or received any statements from the bank regarding it.

I. Liability by Virtue of Being a Cosignatory

In claiming that the funds attached are liable for the overdraft in the joint checking account, the bank contends that as an incident to a joint account, funds received from it by a cosignatory are liable for payment of an overdraft in that account. The crux of Cambridge Trust's position is that since the funds deposited by Mrs. Carney in the Nashua Federal Savings and Loan Association originated from the joint account albeit three months prior to the transaction creating the overdraft, those funds should be liable for payment of the overdraft.

There is little decisional law concerning the liabilities of cosignatories on joint checking accounts. See Halb & Hauenstein, *The Uniform Commercial Code in Minnesota: Article 4 - Bank Deposits and Collections,* 50 Minn. L. Rev. 1027, 1041 (1966); 2 Uniform Laws Annotated (Uniform Commercial Code) § 4-401, at 376 (1968)

(Supp. 1974, at 165). In general article 4 of the Uniform Commercial Code governs the relationship between a bank and its customers with respect to overdrafts. RSA 382-A:4-401 (1961); Mass. Gen. Laws ch. 106, 4-401 (1958). Section 4-401 (1) permits a bank to charge against the account of any customer "any item which is otherwise properly payable from that account even though the charge creates an overdraft." Section 4-104 (1) (a) defines "account" as "any account with a bank and includes a checking, time interest or savings account." Section 4-104 (1) (e) defines "customer" as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank."

What commentators there are appear to be divided as to the effect of sections 4-104 (1) (a), (e) and 4-401 (1) on the liability of cosignatories for overdrafts on a joint account. One view is that an overdraft should be chargeable to all signers on the account because of the broad language of §§ 4-104 (1) (a), (e) and 4-401 (1). 1 W. Hawkland, A Transactional Guide to the UCC § 1.740301, at 385-86 (1964). A contrary view is that a cosignatory cannot be held liable for overdrafts beyond the balance of the joint account. 3 R. Anderson, Uniform Commercial Code § 4-401:4, at 300 (1971).

To sustain its position that Mrs. Carney should be liable for her husband's overdraft as a cosignatory on the joint account, the bank relies primarily on two cases, one decided before the Code and another based specifically on it. *National Bank of Slatington v. Derhammer*, 16 Pa. D. & C. 2d 286 (No. 1) (1958); *Faulkner v. Bank of Italy*, 69 Cal. App. 370, 231 P. 380 (1924). In granting defendant's motion for a more specific complaint, the court in *National Bank of Slatington* ruled that where an overdraft has occurred the liability of a cosignatory under article 4 of the Uniform Commercial Code is limited to the balance of the account. 16 Pa. D. & C. 2d 286, at 289. In order to prevail the bank must show that the defendant cosignatory participated in the negotiation of the check creating the overdraft or was enriched through it. *Id.; see* Annot., 18 A.L.R.3d 1376, 1387 (1968); Del Duca, *Commercial Code Litigation:2*, 66 Dick. L. Rev. 39, 50-51 (1961). In *Faulkner* the California Supreme Court denied the bank recovery against a cosignatory where the cosignatory had received no funds as a result of the overdraft and in no way participated in the fraud creating the overdraft. 69 Cal. App. at 377, 231 P. 380, at 383. Rather than supporting the bank's position both of these

cases militate toward denying it recovery. Since Mrs. Carney neither participated in the transaction creating the overdraft nor received funds as a result of it, she cannot be held liable for payment of it. *City Bank v. Tenn.*, 52 Hawaii 51, 53, 469 P.2d 816, 818 (1970); Annot., 18 A.L.R.3d 1376, 1380 (1968). We find no error either in the trial court's failure to instruct the jury that Mrs. Carney's status as a cosignatory made her liable as a matter of law to the extent of the funds which she received from the account, or in the court's denial of a motion for directed verdict requested on the same ground.

II. Liability Based on the Indemnification Agreement.

Alternatively, the bank maintains that even if Mrs. Carney is not liable for the overdraft as a cosignatory on the joint account, she is liable according to the terms of the indemnification agreement. The bank points out that 4-103 (1) (Variations by Agreement) of the Uniform Commerical Code specifies that the provisions of article 4 "may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care . . . ." RSA 382-A:4-103 (1) (1961); Mass. Gen. Laws ch. 106, § 4-103 (1) (1958). Although "ordinary care" is not defined by the Code, action specifically approved by its provisions constitutes ordinary care. 3 R. Anderson, Uniform Commercial Code § 4-103:6 (1971); RSA 382-A:4-103 (3) (1961); Mass. Gen. Laws ch. 106, § 4-103 (3) (1958).

While allowing an overdraft does not generally constitute failure to exercise ordinary care (RSA 382-A:4-401 (1) (1961)), in this case the assistant treasurer of Cambridge Trust testified that in October 1971 he had become so concerned about the six overdrafts made by Mr. Carney within a two-month period that he instructed the person handling the records for the account to notify him immediately in the event of any large overdrafts. The record indicates that he was not notified. Under such circumstances the jury could have found that the bank did not exercise ordinary care in permitting Mr. Carney to create yet another overdraft. *Cooper v. Union Bank*, 103 Cal. Rptr. 610, 615 (Ct. App. 1972); *Nielson v. Suburban Trust & Sav. Bank*, 37 Ill. App. 2d 224, 234-35, 185 N.E.2d 404, 408-09 (1962). Accordingly, pursuant to the provisions of 4-103 (1) limiting the effectiveness of an agreement to situations where a bank exercises ordinary care, Mrs. Carney could not be held liable on the basis of the indemnification agreement and card which she signed. A.

Stickells and C. Everberg, 25 Massachusetts Practice (Manual on Uniform Commercial Code) § 4.3, at 349 (1963).

### III. Evidentiary Objection

Finally, the bank objected to the use by defendant of a large chart depicting the activity in the Cambridge Trust account from its inception in September 1971 to the date of the overdraft. The basis of plaintiff's objection was that the chart was entitled the "P. Gerard Carney Company" account; no reference was made on the face of the chart to the fact that Mrs. Carney was a cosignatory on the account. The record, however, makes it clear that the validity of plaintiff's objection was recognized by the trial court which specifically pointed out that the chart would be admitted as an exhibit only with the understanding that it represented the activities of the joint account from November 15 on. Since the jury was made aware of this alteration, we do not consider the use of the chart to have been improper. *See Groulx v. Groulx,* 98 N.H. 481, 486, 103 A.2d 188, 191 (1954); *Ibey v. Ibey,* 94 N.H. 425, 427, 55 A.2d 872, 874 (1947).

*Plaintiff's exceptions overruled.*

All concurred.