**F.D.I.C.**
vs.
**Arthur WINSTON**

District Court Department
Appellate Division, Northern District
Trial Court of the
Commonwealth of Massachusetts

**June 24, 1980**

610

Jordan L. Shapiro for the plaintiff.
Sheldon Newman for the defendant.

Present: Cowdrey, P.J., Flynn* &
Feloney, JJ.

FELONEY, J. This is an action in contract brought by the plaintiff, as liquidating agent of the New Boston Bank and Trust Company, to recover for loans allegedly made to the defendant in the form of credits to a joint checking account in the name of the defendant and his wife. The case was heard in the trial court upon the parties' stipulations.

The defendant and his wife held a joint checking account in the New Boston Bank and Trust Company. In 1970 the defendant executed an executive credit agreement with the bank which provided, in relevant part, that the:

"1. Cardholder may obtain one or more loans from the Bank from time to time . . . (b) by credits to his checking account in multiples of $100 automatically arising from checking account overdrafts."

The defendant's wife did not sign this agreement, nor did she become a "cardholder" at any time.

Between August, 1973 and September, 1976, only the defendant's wife drew checks on the couple's joint checking account which resulted in overdrafts. The bank issued credits to cover said overdrafts pursuant to paragraph 1(b) of the parties' credit agreement. Monthly bills issued by the bank in accordance with paragraph 4 of the agreement were sent to the defendant's home. The defendant did not, however, pay or respond to the bills. Paragraph 3 of the agreement provides that a monthly statement of all loans issued under the agreement would be forwarded to a cardholder, and that such "statements shall be deemed correct and accepted by cardholder unless cardholder promptly notifies the bank to the contrary in writing."

The unpaid balance of all credits extended to the defendant as of September 14, 1976 was $4,953.96.

The trial court found that "according to the agreement, loans are automatically made to the cardholders checking account, whenever there is an overdraft in said checking account." Judgment was entered for the plaintiff in the amount of $5,553.96 (credit balance plus $600.00 in attorney's fees).

A bank may charge against a depositor's account any item properly payable from that account even though the result is an overdraft. G.L. c. 106, s. 4-401(1). It is perhaps elementary that the bank should then be entitled to recover the amount of said overdraft from the depositor. State v. Creachbaum, 263 N.E.2d 675, 678 (Ohio 1970). A question arises, however, as to whether a co-signatory of a joint account may be held liable for an overdraft created by other parties to the account.

---

*The Honorable Maurice R. Flynn, Jr., participated in the hearing and post-hearing conference on this case, but passed away prior to the promulgation of this decision.

There is little, if any, definitive case authority in this area. It has been held that a co-signatory may be liable for overdrafts created by another where the parties are joint tenants. **Bremen Bank & Trust Co. v. Bogdan**, 498 S.W.2d 306, 310 (Mo. 1973). A joint banking account held by a husband and wife in Massachusetts would appear to raise at least an inference as to the creation of a joint tenancy. G.L. c. 172, s. 52; **Kitteridge v. Manning**, 317 Mass. 689, 692-693 (1945); **Sawyer v. National Shawmut Bank**, 306 Mass. 313, 315-316 (1940); **Gibbons v. Gibbons**, 296 Mass. 89, 91 (1936); **Splaine v. Morrissey**, 282 Mass. 217, 221-222 (1933).

The **Bremen** ruling is inapposite to the case at bar, however, as the defendant co-signatory in that action was involved in the business activities of her husband. That case involved a business check. Indeed, the **Bremen** case is more reconcilable with the standard of cosignatory liability established by the New Hampshire Supreme Court in **Cambridge Trust Co. v. Carney**, 333 A.2d 442 (1975). Rejecting the view that an overdraft should be chargeable to all signers of an account because of the broad language of ss. 4-104(1)(a), (e) and 4-401(1) of the Uniform Commercial Code, the Court held that the liability of a co-signatory is limited to the balance of the account unless it is demonstrated "that the defendant co-signatory participated in the negotiation of the check creating the overdraft or was enriched through it." Id. at 444, and cases cited.

The report in the instant action is devoid of any direct evidence concerning the nature of, or circumstances surrounding, the overdrafts in question. Nonetheless it is inferable that the defendant benefited from, or was involved in, his wife's banking activities so as to be rendered liable. However, the plaintiff's claim is not based entirely on the defendant's status as a co-signatory.

The plaintiff's cause is bolstered by an examination of the defendant's execution of an executive credit agreement with the bank. As the trial justice correctly found, the defendant assumed responsibility for all credits extended to his checking account which were to arise from account overdrafts. There is no provision in the parties' agreement for a differentiation between overdrafts resulting from the defendant's, as opposed to his wife's, banking activities. The fact that the defendant's wife was not a "cardholder" or party to this agreement would appear irrelevant. Paragraph 1(b) of the contract required the automatic extension of credit to the account, and not to the defendant individually or directly upon presentation of his executive credit card. The non-assignment clause of the agreement is also irrelevant here. No checking account but the defendant's was credited, and no transfer or assignment of contract rights were involved.

The defendant claims, however, that the evidence does not permit a finding of an agency relationship. Such a contention erroneously obscures the essence of the credit agreement discussed above. Moreover, persuasive evidence exists to sustain a characterization of the defendant's wife as his agent.

The operation of an agency between husband and wife is a question of fact, **Groce v. First Nat'l Stores, Inc.**, 268 Mass. 210, 213 (1929); **Lucia Lumber Co. v. Gonyea**, 40 Mass. App. Dec. 95, 99 (1968), which is not proven solely on the basis of the existence of the marital relationship. **Gordon v. O'Brien**, 320 Mass. 739, 741 (1947); **Hannon v. Schwartz**, 304 Mass. 468 (1939); **Newton Juniors, Inc. v. Danys**, 23 Mass. App. Dec. 71, 77 (1962). Evidence which indicates that a husband upon learning of his wife's conduct adopted and ratified it, however, is sufficient to establish the agency of the wife. **Sztramski v. Spinale**, 332 Mass. 500, 503 (1955); **Thomas v. Vera**, 18 Mass. App. Dec. 109, 111 (1959). The instant case is even stronger than those cited decisions. In the three years during which the joint account was used, only the defendant's wife drew the disputed checks. The agency was created early in the relationship between the plaintiff-bank and the defendant-customer

under the executive credit agreement. Furthermore, paragraph 3 of the parties' agreement states that a monthly credit statement "shall be deemed correct and accepted by Cardholder unless Cardholder promptly notifies the Bank to the contrary in writing." The report indicates that the defendant received monthly bills, and assumably statements, from the bank during a three-year period, and failed to respond to the same. The obvious inference arising from such inaction, in view of paragraph 3, is that the defendant not only was apprised of his wife's overdrafts, but also accepted and adopted them, and permitted them to continue. The defendant thus authorized the debt in question and is liable contractually to satisfy it.

The defendant also contends that his liability, if any, is limited to $2,000.00 as he was never advised of an increase in the maximum credit allowed by the parties' agreement. The defendant's reliance on paragraph 11 to support his contention appears misplaced. paragraph 11 required the bank to advise the defendant of his credit ceiling "upon acceptance of this agreement" or at the initiation of the parties' credit relationship. Paragraph 2, however, enabled the bank to raise said ceiling and to charge the defendant "with or without notice or demand" for such excess amounts. The defendant cannot, therefore, attempt to restrict his liability on the basis of lack of notice where no notice was required.

The defendant is liable under the terms of paragraph 1(b) of the parties' executive credit agreement to reimburse the bank for credits extended to his checking account as a result of overdrafts. There being no error, the report is dismissed.