WENDY PACENTA, Plaintiff-Appellant, v. AMERICAN SAVINGS BANK, f/k/a Champaign Loan and Building Association, Defendant-Appellee.

Fourth District   No. 4—89—0561

Opinion filed March 29, 1990.—Rehearing denied May 3, 1990.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellant.

James W. Evans, of Evans & Froelich, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

The plaintiff appeals from the trial court's order granting summary judgment for the defendant bank pursuant to article 4 of the Uniform Commercial Code—Bank Deposits and Collections (Code) (Ill. Rev. Stat. 1987, ch. 26, pars. 4—101 through 4—504). The trial court held that the defendant bank had the lawful right to charge back against plaintiff's individual account the amount of an overdraft created in a joint checking account to which her husband and the plaintiff were cosignatories. We affirm.

On July 20, 1982, the plaintiff opened a private bank account, No. W7—1232—9, with the defendant bank, American Savings Bank, f/k/a Champaign Loan and Building Association. Plaintiff had a previous savings account, No. W7—135—5, but that account was closed by July 22, 1982. On July 26, 1983, plaintiff and her "then husband," Keith Smilie (Smilie), opened a "NOW" joint checking account in the defendant bank, No. 9—01—0—001297—1. The record does not indicate whether plaintiff and Smilie were divorced at the time of the complaint, but paragraph 4 of the complaint states: "4. That during June of 1984, she additionally had a checking account jointly with her then-husband, Keith Smilie, bearing the account number 9—01—0—001—297—1 [sic]."

On June 5, 1984, Smilie deposited a check from Compunet into the joint checking account in the amount of $3,436.65. Prior to this date, Smilie had written two checks, one for $3,088.18 on May 31 payable to Compunet (check No. 358), and another for $348.48 on June 1 payable to Resource Management Services (check No. 360), with the combined amount being exactly $3,436.66. Subsequent to the deposit of the June 5 check, eight checks were presented for payment to the bank, including the two checks mentioned previously, with the remaining six checks written by either the plaintiff or Smilie. In total, these eight checks amounted to $3,874.16, and were paid by the defendant bank. It is not clear in the record which of these checks were presented and paid for after the June 5 check, but the record does show the plaintiff wrote two checks after June 5, amounting to $324.82. The facts which are not disputed by either party are these: on June 22, the June 5 check was returned from the payor bank (First National Bank of Sullivan) for the second time without payment, and this resulted in an overdraft in the joint checking account of $3,436.65, almost the exact amount of the two checks written by Smilie discussed previously.

The defendant bank then proceeded, without prior notice, to cash in a certificate of deposit (CD), No. 7—07—70012329, held by plaintiff

individually in defendant bank, debited this account for the $3,436.65, closed this account and sent the remainder of the CD ($602.13) to the plaintiff by check on June 25, 1984. The defendant also sent another check ($22.39) for the balance of the now closed joint checking account. The bank account held individually by the plaintiff was also closed on June 24, 1984.

In count I of her complaint, the plaintiff sued the bank in trover and conversion for the return of this money, plus interest she should have earned on the money in the savings account, plus interest on the money wrongfully withheld. Count II asked for punitive damages for defendant's wilfully and wantonly withholding of such money. The court, in its memorandum opinion and order on December 21, 1987, held that count I sufficiently alleged a cause of action for conversion, but dismissed the portions of count I that dealt with interest and also dismissed all of count II. The court then allowed the plaintiff 21 days to amend her complaint. Rather than amending, the plaintiff brought a motion for summary judgment on August 19, 1988, alleging defendant wrongfully converted funds from the plaintiff's individual bank account No. W7—135—5. Defendant, in its motion for summary judgment, while pointing out that plaintiff's W7—135—5 account had been closed since 1982, admitted plaintiff had a personal account No. W7—1232—9 with it; and admitted to the facts concerning the existence of a joint checking account, the amount of Smilie's June 5 check, and the checks Smilie wrote, the amount of which equalled almost exactly the size of the June 5 check. Neither side referred in either motion to the account number of the CD or the fact that the CD was cashed out and closed to satisfy the overdraft.

The trial court in its order of January 11, 1989, granted the defendant's motion for summary judgment with prejudice, in that the defendant was entitled to judgment as a matter of law. The motion by the plaintiff to reconsider was denied on June 21, 1989, and plaintiff brought this appeal.

■■ ■ The Code, as adopted by Illinois, provides rules for bank deposits and collections under article IV. (Ill. Rev. Stat. 1987, ch. 26, pars. 4—101 through 4—504.) It is well settled under the Code that when a depositor creates an overdraft, the bank may recover against the individual who made such an overdraft. (*First National Bank v. Lambert* (1982), 109 Ill. App. 3d 177, 182, 440 N.E.2d 306, 310; Ill. Rev. Stat. 1987, ch. 26, par. 4—401.) Section 4—401 of the Code mandates that banks have the right to charge a customer's account, even though such charges create an overdraft. (Ill. Rev. Stat. 1987, ch. 26, par. 4—401(1).) By paying off presented checks based on

checks already received but not yet accepted by the payor bank, the collecting bank makes a provisional settlement of such checks. (Ill. Rev. Stat. 1987, ch. 26, par. 4—211(1)(a).) If such checks fail for reason of dishonor, the bank may "charge back the amount of any credit given for the item [check] to its customer's account or obtain refund from its customer." (Ill. Rev. Stat. 1987, ch. 26, par. 4—212(1).) "Account" is defined as "any account with a bank and includes a checking, time, interest or savings account." (Ill. Rev. Stat. 1987, ch. 26, par. 4—104(1)(a).) "Item" is defined as "any instrument for the payment of money" (Ill. Rev. Stat. 1987, ch. 26, par. 4—104(1)(g)), which would include a check (Ill. Rev. Stat. 1987, ch. 26, par. 3—104(2)(b)). "Customer" is defined as "any person having an account with a bank or for whom a bank has agreed to collect items." Ill. Rev. Stat. 1987, ch. 26, par. 4—104(1)(e).

Thus, the law under the Code is well settled that a payment for an overdraft is, in effect, a loan by the bank to the drawer, its customer, who, by the act of drawing a check against nonexistent funds, promises to repay the loan, a loan for which the drawer is liable. (*United States Trust Co. v. McSweeney* (1982), 91 A.D.2d 7, 9, 457 N.Y.S.2d 276, 278.) This is the primary argument of the defendant, *i.e.*, the plaintiff was a customer of its bank, an overdraft was created against the account of plaintiff, and this was a provisional settlement creating a loan against the plaintiff's account. When the check was dishonored and the loan not paid, the plaintiff was liable, and the bank had the right to collect this loan from any account the plaintiff held, including the CD account plaintiff held in her own name.

While the language of the Code clearly permits this process against the drawer of the overdraft, it is not clear from this language whether such a process is permitted against any and all signers of the overdraft. (Note, *Overdraft Liability of Joint Account Cosignatories*, 36 La. L. Rev. 1083, 1084 (1975-76) (authored by Malcolm S. Murchison).) There are no Illinois cases which speak to such a fact situation under the Code. To support her position, the plaintiff cites *Nielson v. Suburban Trust & Savings Bank* (1962), 37 Ill. App. 2d 224, 185 N.E.2d 404. Yet *Nielson* is distinguishable in fact pattern and holding in two important respects: (1) the *Nielson* court specifically found the bank was negligent in its handling of the matter, whereas there is no evidence or finding of such negligence in this case; and (2) the *Nielson* case was decided prior to Illinois' adoption of the Code, and therefore, its holding was not based on the Code in any way. (*Nielson*, 37 Ill. App. 2d at 234-35, 185 N.E.2d at

409.) Because of this, *Nielson* is inapplicable, and this is a case of first impression.

As stated previously, liability of cosigners of a joint account is not clearly dealt with in the Code. Commentary and case law across the country considering the Code are divided on this particular issue. (Note, *Banking Law—Overdrafts—Liability for Overdrafts of a Joint Bank Account under the UCC—Cambridge Trust Co. v. Carney*, 333 A.2d 442 (N.H. 1975), 1976 B.Y.U. L. Rev. 499, 502-03 (hereinafter *Liability for Overdrafts*).) Some commentators argue that to impose such liability would establish an implied-partnership type of liability. They further argue that since doubt exists as to whether the problem was fully examined by the drafters of the Code, the courts should not necessarily conclude that the drafters intended to imply a partnership in such an account. Therefore, the courts should not hold all cosigners liable in the event of an overdraft by one of the signers. (Note, *Overdraft Liability of Joint Account Cosignatories*, 36 La. L. Rev. at 1086-87.) We are unpersuaded by this view.

■ We find more persuasive the view that the Code language is very broad in this area, and the Code should be liberally construed. The Code's purpose is to permit and promote continued expansion of commercial practice in that it encourages banks to pay overdrafts by allowing the banks to recover from their makers, and this policy would be undermined if all cosignatories could not be held liable. (See, *e.g.*, *Liability for Overdrafts*, 1976 B.Y.U. L. Rev. at 507-08.) Further, since section 4—401 of the Code " 'speaks in terms of charging the account rather than *** the actual drawer of the check, *** the subsection authorizes the bank to charge the payment on overdraft to all members of an overdrawn joint account.' " *Williams v. Cullen Center Bank & Trust* (Tex. 1985), 685 S.W.2d 311, 314, quoting 1 W. Hawkland, *A Transactional Guide to the Uniform Commercial Code* 385 (1964).

■ Examining the Code definitions set forth above, the plaintiff is clearly the customer of the defendant bank, and the Code allows the bank to charge against plaintiff's accounts, including any account the plaintiff has with the bank, including her individual savings account, an overdraft of an account to which the plaintiff is a cosignatory. Thus, the Code permits the defendant bank to lawfully remove the funds from the plaintiff's individual account.

The plaintiff argues since she did not present the check which was dishonored, she should not be held liable for this amount. In other jurisdictions which have had occasion to consider cases involving cosignatory liability, the courts have arrived at differing results.

In *Williams*, the Texas Supreme Court established a test for such alleged indirect cosignatory liability. In this test, the burden is on the bank to prove (1) plaintiff's participation in the transaction which created the overdraft; (2) plaintiff's enrichment by the overdraft; or (3) that plaintiff in some way ratified the transaction creating the overdraft. (*Williams*, 685 S.W.2d at 315.) In *Williams*, the trial court granted summary judgment for the bank, but the appellate court reversed, ordering a new trial to determine whether the cosignatory was liable according to this test.

In *Cambridge Trust Co. v. Carney* (1975), 115 N.H. 94, 333 A.2d 442, which held the cosignatory not liable, the facts are readily distinguishable from this case. In *Cambridge Trust*, the evidence directly showed the wife did not participate in the overdraft, she never wrote any checks on this joint account, and there was a finding of negligence on the part of the bank, since the husband had previously overdrawn the account on six separate occasions. (*Cambridge Trust*, 115 N.H. at 98, 333 A.2d at 445.) Unlike *Cambridge Trust*, this case involves no evidence of negligence, but does involve evidence of direct participation by the plaintiff in the account which was overdrawn by the joint tenant.

In *McSweeney*, both husband and wife participated equally in a joint account, upon which numerous overdrafts were written. While the court did not hold the wife liable for the entire amount of the overdraft total, she was held liable for the total amount of the checks she personally had written as a member of the account ($16,811.43), irrespective of whether those checks directly caused the overdraft. (*McSweeney*, 91 A.D.2d at 11, 457 N.Y.S.2d at 279.) Although cited by plaintiff as supporting her argument, *McSweeney*, in fact, demonstrates that the plaintiff is liable for any checks she wrote in the account, and may be liable for more than her "share" of the total overdrafts.

In *Yoder v. Cromwell State Bank* (Ind. App. 1985), 478 N.E.2d 131, the husband presented several checks to the bank from a dairy company, which later stopped payment, resulting in a very large overdraft, a small part of which was set off against what remained of the Yoders' joint checking account held by both husband and wife. The trial court granted summary judgment against the Yoders for the balance of the overdraft debt. (*Yoder*, 478 N.E.2d at 132.) The defendant wife in *Yoder* argued she should not be held liable, since she did not personally write or present these checks to the bank. The *Yoder* court rejected this argument, since the wife had the right to draw on the provisional credit established in the account upon the

husband's presentment of the checks, thus providing her with consideration and liability for these checks. *Yoder*, 478 N.E.2d at 136.

As in *Yoder*, it was on the plaintiff's account which the provisional credit was made. As holder of the account in joint tenancy, she had the right at all times to withdraw any sums under this account. The record shows the plaintiff wrote two checks in this account after the presentment of the June 5 check. Therefore, according to the test in *Williams*, there is evidence in the record that she participated in the writing of checks on the account after provisional credit was made, and when plaintiff received this provisional credit, she was enriched by the virtue of her ability to draw on such funds while they remained in the account, thus imparting to the plaintiff consideration for the check, whether or not she actually participated in the transaction. As in *Yoder*, therefore, plaintiff is liable upon the dishonor of the June 5 check and the revocation of the provisional credit.

Furthermore, section 4—103 of the Code states, "The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith ***." (Ill. Rev. Stat. 1987, ch. 26, par. 4—103(1).) The signatory card in this case, while having no specific language regarding indemnification or permitting the bank to set off against the individual accounts of the plaintiff, did state the plaintiff and Smilie signed the account "as joint tenants with the right of survivorship, and not as tenants in common." As such, both members of this joint account had the right to draw on and deposit funds in this account. Therefore, this is affirmative and clear language that enabled the plaintiff to draw on and benefit from the provisional credit. Since there is no evidence of bad faith on the part of the bank, such language regarding joint tenancy is further evidence that the plaintiff fits the *Williams* test and is liable for the amount of the overdraft.

Therefore, it is the holding of this court that it was proper under the Code for the bank to hold the plaintiff, as its customer, liable for funds resulting from the provisional credit revoked as a result of the dishonored check of June 5. It is common commercial practice for the bank to make such provisional loans, and public policy requires that one who has established a joint account be held liable, to the extent of his funds held in other accounts in that bank, for the amount of credit the bank gives the joint account, and for any overdrafts which result from this credit, regardless of who personally presents the check on that account. Such a bank has the right, under the Code, to unilaterally charge this debt against any account the plain-

tiff customer may have with the bank, including plaintiff's individual account or CD, regardless of whether the account card has a specific indemnification clause for the bank.

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

SPITZ and GREEN, JJ., concur.